Jonathan ALDRICH, Leroy Bishop, Beverly Clothey, Ruth MacLeod, and Richard Nicholas, on behalf of themselves and all others similarly situated,

v.

Louis SULLIVAN, M.D., in his official capacity as Secretary of Health and Human Services.

Civ. A. No. 80–279.

United States District Court, D. Vermont.

Aug. 13, 1992.

---

Alexander Scherr, Vermont Legal Aid, Inc., St. Johnsbury, Vt., and Joan Bauer, Vermont Legal Aid, Inc., Montpelier, Vt., for plaintiffs.

Lawrence A. Levey, Office of General Counsel, Dept. of Health and Human Services, Baltimore, Md., and John–Claude Charbonneau, Asst. U.S. Atty., Rutland, Vt., for defendant.

## OPINION AND ORDER

COFFRIN, Senior District Judge.

August 1, 1991, the Secretary of Health and Human Services (the Secretary) published in the Federal Register final regulations regarding the use and evaluation of various medical evidence used by adjudicators in Title II and Title XVI disability determinations. 56 Fed.Reg. 36,932–70 (1991) (to be codified at 20 C.F.R. §§ 404.-1502–416.993) (the August 1, 1991 regulations). November 8, 1991, plaintiffs filed a Notification to Court and Renewal of Requests for Injunctive Relief arguing, *inter alia*, that the Secretary's August 1, 1991 regulations were illegal. November 26, 1991, the Secretary filed Defendant's Opposition to Plaintiff's Request for Injunctive Relief. May 13, 1992, this Court issued a Memorandum Opinion and Order in which we concluded that "to the extent that [the August 1, 1991 regulations] alter the treating physician rule as set out by the Second Circuit in *Schisler* and elsewhere, they do not comport with federal law." Memorandum Opinion and Order at 22. At the time, we invited the parties to brief further the issue of whether or what kind of injunction we should issue.

Plaintiffs and the Secretary both filed two responsive briefs, one each on June 3,

1992, and June 18, 1992. After thorough consideration of the briefs as well as the August 1, 1991 regulations themselves, we conclude no injunction is necessary because the Secretary has the authority to issue the August 1, 1991 regulations.

## BACKGROUND

October 30, 1980, plaintiffs commenced this lawsuit arguing the Secretary was promulgating illegal standards for the evaluation of certain evidence in disability determinations under Title II and Title XVI of the Social Security Act. Most recently, plaintiffs complain that the standards embodied in the August 1, 1991 regulations are illegal, at least in the Second Circuit, because they conflict with the Second Circuit's long-standing treating physician rule.[1] We issued an opinion on May 13, 1992 stating that the Secretary had not shown to us that he had the legal authority to promulgate these regulations in conflict with the treating physician's rule.

On July 8, 1992, Judge Elfvin in the Western District of New York published a Memorandum and Order in response to similar requests from plaintiffs in a similar lawsuit in New York for an injunction forbidding the Secretary from using the August 1, 1991 regulations. *Schisler v. Sullivan,* No. 80–CV–572E, slip op., 1992 WL 170736 (W.D.N.Y. July 8, 1992) *(Schisler IV).* Judge Elfvin had previously, with the aid of the parties, written a Social Security Regulation setting out the treating physician rule for use by Social Security adjudicators in the Second Circuit (the *Schisler* SSR). *See Schisler v. Bowen,* 851 F.2d 43 (2d Cir.1988) *(Schisler II).* In *Schisler IV,* Judge Elfvin determined: (1) federal courts have no authority to enjoin the Secretary from using duly promulgated regulations unless the regulations are arbitrary and capricious; (2) after promulgation of such regulations, the Secretary need not use the *Schisler* SSR in his adjudications; and (3) the treating physician rule is still "given an overriding and paramount status and effect in the courts of the Second Circuit as appropriate and until and unless the United States Court of Appeals for the Second Circuit otherwise declares." *Schisler IV,* slip op. at 18.

As requested in our May 13, 1992 Memorandum Opinion and Order, plaintiffs have pointed out certain provisions in the August 1, 1991 regulations which, they assert, directly conflict with the treating physician rule in the Second Circuit. The main area of conflict appears to center around new sections 20 C.F.R. §§ 404.1527 and 416.-927,[2] which plaintiffs claim substantially alter the analysis of evidence from treating sources. One point of conflict, according to plaintiffs, is that there is no requirement in the Second Circuit treating physician rule that the opinion of the treating source be adequately supported by objective evidence before it is afforded extra weight.

---

1. Familiarity with the Second Circuit's treating physician rule is assumed. It is discussed in more depth in our Memorandum Opinion and Order of May 13, 1992, and another formulation of it can be found in *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986).

2. § 404.1527 Evaluating medical opinions about your impairment(s) or disability.

....

(d)(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion....
20 C.F.R. § 404.1527(d)(2). 56 Fed.Reg. 36,960–61. 20 C.F.R. § 416.927(d)(2) is substantially the same. 56 Fed.Reg. 36,969. (Part 404 of Title 20 prescribes regulations under Title II of the Social Security Act whereas Part 416 prescribes regulations under Title XVI.)

*Schisler II,* 851 F.2d at 47. This rule appears to be changed in the August 1, 1991 Regulations. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Another difference, according to plaintiffs, is that even if there is objective evidence contrary to the treating source's report, under the Second Circuit rule, the treating source's report is still entitled to extra weight. *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986) *(Schisler I).* Under the August 1, 1991 Regulations, it appears that the treating source's opinion is only afforded extra weight after it is determined there is no substantial evidence contrary to it. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).[3] Plaintiffs further note that "in light of the examples in the Secretary's POMS, which emphasize almost exclusively ways in which a treating physician's opinion can be overridden, the Secretary's framework provides ample bases for rejecting the treating physician's opinion." Plaintiff's Supplementary Brief filed June 3, 1992 at 8.

### DISCUSSION

The first question before us is whether we should revisit the issue of whether the Secretary had the authority to promulgate his August 1, 1991 regulations. In a brief filed June 3, 1992, the Secretary argues our May 13, 1992 Memorandum Opinion and Order was incorrect and his authority to issue the regulations stems from 42 U.S.C. § 405(a).

■ Plaintiffs argue the Secretary's June 3, 1992 brief is an ill-disguised motion for reconsideration. Since the Secretary's brief was not filed within ten days of the Memorandum Opinion and Order of May 13, 1992, plaintiffs argue it is not timely and we have no jurisdiction to consider it under Fed.R.Civ.P. 59(e). It is correct that the Secretary's brief was not filed within ten days of the Memorandum Opinion and Order. On the other hand, the order section of the Memorandum Opinion and Order simply stated "[p]arties are also hereby ORDERED to continue to work to resolve as many of the remaining issues as possible, in light of this Memorandum Opinion." Therefore, there is no particular "Order" (or, in other words, "judgment") which the Secretary is or would be asking us to reconsider pursuant to Fed.R.Civ.P. 59(e). Instead, the Secretary's brief appears to be simply a response to our asking the parties whether they think injunctive relief is appropriate at this time. Therefore, this argument of plaintiffs is rejected.

■ The Secretary asserts that we should not enjoin his use of the August 1, 1991 regulations because they represent a valid exercise of his regulatory authority. Although we rejected this argument in the Opinion and Order of May 13, 1992, the Secretary cites additional authority for his position and it bears further consideration.

In particular, the Secretary points to 42 U.S.C. § 405(a) as interpreted by the Supreme Court in *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).[4] In *Campbell,* the claimant first proved she was unable to perform her former work. At this point, the burden then shifted to the Secretary to prove there was work that the claimant could perform. This the Secretary did by use of medical-vocational guidelines showing the existence of work in the national work force which claimant was capable of performing. The Secretary did not present testimony that

**3.** However, in the comments to new §§ 404.-1527 and 416.927, the Secretary notes:

When [a treating source's opinion] is not controlling, we have provided several rules which recognize the special status of treating sources, and which accord their opinions greater weight—even when they are unsupported or contradicted—than such opinions would otherwise be entitled to if they came from a nontreating source.

56 Fed.Reg. 36,950. This would lead to the conclusion that the standards of review set out in the Secretary's August 1, 1991 regulations and the Second Circuit's treating physician rule may not be very far apart.

**4.** The Secretary also cites *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In *Yuckert,* the Supreme Court upheld the Secretary's use of "severity regulations" which screen out before the hearing process claimants whose disabilities the Secretary determines are not severe from a medical standpoint alone without considering any other factors. Of the two cases, *Campbell* and *Yuckert, Campbell* is more on point to the issues in this litigation.

there was work in the claimant's community that she was capable of performing. In the opinion below, the Second Circuit held that the guidelines alone could not constitute substantial evidence because the Secretary was required by the Social Security Act to provide "specific alternative occupations available in the national economy that would be suitable for the claimant," and her failure to do so meant the determination was not supported by substantial evidence. For this reason, the Second Circuit struck down the Secretary's decision. *Campbell v. Secretary of Dept. of Health and Human Services*, 665 F.2d 48, 53 (2d Cir.1981).

The Supreme Court reversed, reasoning as follows:

> The Social Security Act directs the Secretary to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same" in disability cases. 42 U.S.C. § 405(a). As we previously have recognized, Congress has "conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Social Security Act." "Where, as here, the statute expressly entrusts the Secretary with the responsibility for implementing a provision by regulation, *our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious.*"

*Campbell*, 461 U.S. at 464–66, 103 S.Ct. at 1956–57 (citations and footnotes omitted) (emphasis added).

*Campbell* is not distinguishable from the present situation. The August 1, 1991 regulations at issue are regulations squarely concerning the " 'nature and extent of the proofs and evidence and the method of taking and furnishing the same' in disability cases." *Id.*, citing 42 U.S.C. § 405(a). For example, new § 404.1527 is titled "Evaluating medical opinions about your impairment(s) or disability." Therefore, the Secretary has the authority to issue these regulations, and have his adjudicators use them, and we must accept these regulations unless we find them to be arbitrary and capricious.

■ Having read the regulations through, we cannot say that they are arbitrary and capricious. Plaintiffs argue they are more complicated than the *Schisler* SSR, and will not save processing time and improve efficiency. Plaintiffs further characterize the new regulations as "extremely cumbersome and confusing." Plaintiff's Response of June 18, 1992 at 7. We have read the regulations and are not convinced that they are so confusing as to be arbitrary and capricious. Instead, they create a detailed road map for adjudicators to follow when evaluating medical evidence from various sources. The regulations call for particularized factfinding and weighing of different types of medical evidence in a systematized manner. If applied in a conscientious manner, we have no doubt they could lead to fair disability adjudications. For this reason, we uphold the Secretary's right to instruct his adjudicators to use the August 1, 1991 regulations in disability cases decided in Vermont.

■ This does, however, leave federal courts reviewing the Secretary's individual decisions potentially in a bit of a quandary. Congress has entrusted to federal courts the duty to review disability cases in order to ensure that the findings reached on the merits by the Social Security Administration are supported by substantial evidence. 42 U.S.C. § 405(g).[5] The Second Circuit,

---

5. The findings of the Secretary as to any fact if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Secretary or a decision is rendered under subsection (b) of this section which is adverse to an individual ... because of failure of the claimant or such individual to submit proof in conformity with any regulations prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.
42 U.S.C. § 405(g). From this, the Secretary argues federal courts only have the power to review whether a claimant's proofs are in conformity with his regulations, and the validity of

along with most of the Circuits, has concluded in the past that as part of its review of disability cases under the substantial evidence standard, medical opinions from treating physicians must be accorded a certain amount of weight relative to medical opinions from other sources. *See Grindle v. Sullivan*, 774 F.Supp. 1501, 1508 (N.D.Ill.1991) (reviewing the treating physician rule in the different circuits); *Schisler IV*, slip op. at 10–14 (discussing historical and legal basis of treating physician rule in the Second Circuit). The import of the treating physician rule deriving from § 405(g) is that given the present state of the law, a federal district court in the Second Circuit reviewing a disability case on appeal from the Secretary must apply the Second Circuit's treating physician rule to determine whether the Secretary's decision comports with substantial evidence. However, as plaintiffs have noted, there are at least two differences between the August 1, 1991 regulations and the treating physician rule as it has been articulated by the Second Circuit.

As matters stand, because of the differences between the treating physician rule and the August 1, 1991 regulations, occasions may arise when a federal court will conclude that an opinion is not supported by substantial evidence even though a Social Security adjudicator has correctly followed the applicable regulations. Hopefully, such cases will be few. The comments to the August 1, 1991 regulations do "recognize the special status of treating sources," 56 Fed.Reg. 36,950, and if adjudicators faithfully implement this understanding, application of the August 1, 1991 regulations and the treating physician's rule should yield the same result in most instances.

In our May 13, 1992 Memorandum Opinion and Order we held that federal courts have "the authority to set out the law applicable to everyone reviewing Social Security claims, including the Secretary." Slip Opinion at 17. This led to the conclusion that the legal relationship between the standards used by the Secretary and by federal courts was that the Secretary was required to follow the law of the Circuit. However, we reached this conclusion only after determining that the Secretary had not shown any adequate legal basis for promulgating the August 1, 1991 regulations. Based on *Campbell*, we now decide that, in fact, the Secretary does have the authority to promulgate the August 1, 1991 regulations. Therefore, those regulations being of legal force, there is no legal reason to enjoin their use.

Moreover, the August 1, 1991 regulations serve to promote one of Congress' longstanding goals in the area of Social Security administration: the standardization of the treatment of disability claimants around the nation. *See, e.g.,* H.Conf.Rep. No. 797, 98th Cong., 2d Sess. at 37, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3038, 3080, 3095 (cited in *Schisler I*, 787 F.2d at 83). We note that by using notice and comment rulemaking, the Secretary's method of proceeding in this case differs vastly from his previous attempts to defy judicial precedents considered unfavorable by using nonacquiescence. In addition, the benefits which will stem from the Secretary's use of the August 1, 1991 regulations nationwide offset to a certain extent the difficulties faced by federal judges in the Second Circuit who, through necessity, will be required to review the Secretary's determinations under a different standard than the one set out in the August 1, 1991 regulations.

The practical effect of our decision denying plaintiffs' request for injunctive relief will be to reach the same results as Judge

---

the regulations, and not the question of whether the outcome comports with substantial evidence. Defendant's Brief filed June 3, 1992 at 4. This argument is surely wrong. First, the Supreme Court has long sanctioned the review of disability cases to see if they are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Second, § 405(g) only limits a re-

viewing court's ability to review whether a claimant's proofs are in conformity with the Secretary's regulations when the claimant has been denied benefits *because the claimant's evidence was not in conformity*. Thus, when the Secretary reaches a decision on the merits, federal courts can and must review under the substantial evidence standard.

Elfvin did in *Schisler IV:* the Secretary may evaluate disability claims under his August 1, 1991 regulations, but federal courts on review will continue of necessity to utilize the Second Circuit treating physician rule.[6] As did Judge Elfvin, we recognize the potential awkwardness of this holding, but feel bound to so rule based on the law before us.[7]

## CONCLUSION

Based on the foregoing, plaintiffs' motion for injunctive relief is denied. The Court recognizes that defendants are authorized to review disability claims of class members using the duly promulgated August 1, 1991 regulations, and also notes that such claims will continue to be reviewed at the federal judicial level using the Second Circuit's treating physician rule.

---

**6.** An incidental benefit of bringing the status of the controversy over the treating physician rule into conformity with the Western District of New York is simplification of the matter for the appellate court which is likely to be called upon to ultimately resolve the issue.

**7.** We note that Social Security law is not the only area in which administrative agencies apply different legal standards than federal judges reviewing the same cases. Analyzing the Americans with Disabilities Act, a commentator has found that although the Equal Employment Opportunity Commission and Merit Systems Protection Board will consider ordering an employer to reassign a handicapped plaintiff to a different job even if such reassignment would violate a collective bargaining agreement, federal courts will generally not permit this remedy. Note, *The Americans With Disabilities Act: Implications for Job Reassignment and the Treatment of Hypersusceptible Employees,* 57 Brooklyn L.Rev. 1237, 1253 (1992). Naturally, the potential impact on the federal courts is considerably less in that circumstance because there the agencies' standard is perceived as more favorable to plaintiffs than the judicial standard.