**Rita SCHAAL Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.[1]**

**Dockets 96–6212, 96–6316.**

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1997.

Decided Jan. 23, 1998.

---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. He

is therefore substituted as the defendant in this action, pursuant to Fed. R.App. P. 43(c)(1).

**498**

theCarolyn A. Kubitschek, Lansner & Kubitschek, New York City (Irwin M. Portnoy, Newburgh, NY, on the brief), for Plaintiff–Appellant.

Karen G. Fiszer, Assistant Regional Counsel, Social Security Administration, New York City (Arthur J. Fried, General Counsel, Social Security Administration; Barbara L. Spivak, Chief Counsel—Region II, on the brief), for Defendant–Appellee.

Before: ALTIMARI, WALKER, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiff-appellant Rita Schaal appeals from an order and judgment of the United States District Court for the Northern District of New York upholding the decision of the Commissioner of Social Security that she was not entitled to Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (the "Act").[2] She also appeals from an order and judgment of the district court denying her motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b). We conclude that it is not clear what legal standard the administrative law judge ("ALJ") applied in weighing the medical opinion of plaintiff's treating physician, and that the ALJ failed to provide a required statement of valid reasons for discounting the treating physician's opinion. Accordingly, we vacate the judgment of the district court insofar as it upheld the Commissioner's decision to deny SSI benefits and we remand to the district court with instructions to enter a judgment remanding the case to the Social Security Administration ("SSA") in order that an ALJ may reweigh the evidence under the correct legal standard. In view of our disposition of the case, we need not act upon the appeal from the denial of appellant's Rule 60(b) motion.

## I.

Plaintiff filed a *pro se* application with the SSA for SSI disability benefits on August 14, 1990. She initially alleged disability resulting from allergies and painful varicose veins. This application was denied, reconsidered, and denied again. At plaintiff's request a hearing was then held on December 21, 1990, before an ALJ, pursuant to 20 C.F.R. § 416.1400. On February 8, 1991, the ALJ ruled that plaintiff was not eligible for SSI benefits because she was not "disabled" for purposes of the Act.

Plaintiff requested that the ALJ's decision be reviewed by the SSA's Appeals Council, which granted review and vacated the ALJ's decision on the ground that the ALJ had failed to meet his "special duty to assist a *pro se* claimant and to inquire into and explore

---

**2.** The functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security effective March 31, 1995. *See* 42 U.S.C. §§ 901–09. The administrative decision in this case became final before the transfer of authority to the Commissioner. However, as the Commissioner is the defendant in this action, we refer to the Commissioner, rather than the Secretary, throughout.

all relevant facts" (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982)). Specifically, although plaintiff had said she was being treated by a physician, the ALJ made no effort to obtain medical records from this physician. The case was remanded to the ALJ for further proceedings. However, because repeated attempts to contact plaintiff were unsuccessful, her case was dismissed pursuant to 20 C.F.R. § 416.1457. Subsequently, plaintiff requested that the dismissal of her case be reviewed. She was granted a new hearing before the same ALJ, who conducted the hearing on June 6, 1993, during which plaintiff was represented by counsel.

The ALJ heard plaintiff's testimony regarding her condition and also reviewed medical treatment notes and reports by various physicians. Plaintiff testified that she was 39 years old, that she had attended high school through the twelfth grade, but that she "had difficulty learning" and attended "special classes" where she was taught sewing. She further testified that she suffered from "a lot of pain in [her] legs" that prevented her from walking very far, as well as asthma and allergies that sometimes made breathing difficult. According to the "Disability Report" that she filed with the SSA, she had held a job as a garment "sewer" for six months in 1984 but otherwise had not been employed during the preceding 15 years. She testified at the hearing that she had lost her job as a sewer because her allergies, which were triggered by dust, caused her to choke and vomit on the garments.

The medical evidence considered by the ALJ included the following: Plaintiff had been examined by Dr. Ravi Ramaswami on September 13, 1990, who found that she suffered from "mild varicosities bilaterally" and "mild chronic obstructive pulmonary disease." In December 1990, plaintiff began receiving treatment at the Mid–Hudson Family Health Institute's Kingston Family Practice Center ("Mid–Hudson"). A Mid–Hudson "physical examination" report dated December 3, 1990 indicated "tortuous varicosities" in her left leg and "lesser varicosities" in her right leg. Otherwise, the report

indicated that plaintiff was "comfortable, [and] in no distress." Medical treatment notes from a subsequent visit to Mid–Hudson on January 16, 1991 noted controlled asthma, varicosities, and "chronic stable anxiety." The notes also recorded that surgery for plaintiff's varicosities was "pending." Plaintiff was hospitalized for surgical "excision of multiple varicosities" in her left leg in February 1991.

On December 10, 1992, plaintiff was examined by Dr. Reuben Mokotoff, who concluded that she "does not appear to have a true allergy" but that "she has breathing problems" that "sound more like post-infectious asthma." He also found "superficial varicosities" in her right leg. His medical report indicated that she was 5'6" tall and weighed 250 pounds at that time. On a form labeled "Medical Assessment of Ability to Do Work-Related Activities (Physical)," Dr. Mokotoff indicated that plaintiff's lifting and carrying capacity was unimpaired. He found that plaintiff's capacity for standing and walking was limited but could not quantify the number of hours that she would be able to stand or walk during a typical work day. Dr. Mokotoff also recommended a neurological examination because plaintiff exhibited some loss of sensation in her right leg. On February 1, 1993, the ALJ requested a neurological consultation by Dr. Stanley Mandell, which took place on March 30, 1993. Dr. Mandell found no "evidence of a structural lesion in the central or peripheral nervous system." He also indicated that plaintiff's capacities for lifting, carrying, standing, and walking were unimpaired.

Plaintiff submitted a questionnaire completed by Dr. Mark Jobson, who apparently began treating her at the Mid–Hudson clinic on October 29, 1992. Dr. Jobson completed this questionnaire on May 28, 1993. The questionnaire consisted of a series of questions, followed by spaces for "yes" or "no" check marks. This was the same format used in the forms filled out by Drs. Mokotoff and Mandell, except that instead of requesting a separate written explanation of the "yes" or "no" answers, Dr. Jobson's questionnaire simply asked whether as a general matter the physician's diagnosis was "con-

firmed by medical signs and findings established by medically acceptable clinical or laboratory diagnostic techniques." By checking "yes" on the form Dr. Jobson indicated that plaintiff was disabled based on objective medical findings, that she would have trouble working six hours per day without intermittent breaks, that she would have to alternate between sitting and standing, and that it would be reasonable to expect that her symptoms would result in frequent absences from the workplace. By checking "no" he indicated that she would not have to lie down and rest during an eight-hour work day and that there was no manifestation of "increased nervousness, depression or anxiety."

On July 27, 1993, having heard and weighed the above evidence, the ALJ again ruled that plaintiff was not disabled. Plaintiff requested review of the ALJ's decision, and along with this request submitted to the Appeals Council Dr. Jobson's treatment notes. The Appeals Council denied review on November 9, 1993. The following day, plaintiff submitted additional evidence, including a note from Dr. Jobson stating that based upon his current examination of plaintiff and his review of her prior medical records, it was his view that she was "totally disabled and has been disabled, for the past 3 years, since 1990." The Appeals Council again denied review, and the ALJ's decision became the final decision of the Commissioner on December 30, 1993.

Plaintiff then filed this action in the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Chief Judge*) pursuant to 42 U.S.C. § 405(g), and submitted additional evidence from a psychologist, Dr. Wilson Meaders. Dr. Meaders' treatment notes described plaintiff's depression and history of abusive relationships. On a form labeled "Psychiatric Report (Employment)" he indicated that plaintiff "has intense social phobia that makes work impossible."

Chief Judge McAvoy referred the case to Magistrate Judge Gustave J. DiBianco, who on October 17, 1995 issued a Report and Recommendation upholding the Commissioner's decision. This Report and Recommendation was adopted in full by Chief Judge McAvoy, who therefore dismissed the action and entered judgment for the Commissioner on June 11, 1996.

Plaintiff then filed a motion for relief from the district court's judgment pursuant to Federal Rule of Civil Procedure 60(b). With this motion, plaintiff submitted evidence that on March 22, 1996, the Commissioner had ruled on a separate application for SSI benefits filed by plaintiff on September 15, 1995. In ruling upon this second application for benefits, the Commissioner had found that as of October 10, 1993, but not before, plaintiff was disabled due to an "anxiety-related disorder." [3]

On August 7, 1996, prior to filing her Rule 60(b) motion, plaintiff had timely filed an appeal of the district court's judgment upholding the Commissioner's decision denying SSI benefits under plaintiff's original application. That appeal was withdrawn without prejudice pending the district court's ruling on the Rule 60(b) motion. Chief Judge McAvoy denied plaintiff's motion for relief from the judgment on October 23, 1996, after which plaintiff reinstated her original appeal. She also filed an appeal of the district court's order denying her Rule 60(b) motion. These appeals were subsequently consolidated.

On appeal, plaintiff now contends, *inter alia*, (1) that the ALJ applied incorrect legal standards in weighing the opinion of her treating physician and in judging the credibility of her own testimony concerning her symptoms; (2) that the ALJ erroneously failed to develop the administrative record regarding her mental condition; (3) that the district court erroneously failed to remand to the SSA for consideration of new and material evidence; and (4) that the district court erred in refusing to grant plaintiff's motion for relief from the judgment.

## II.

In reviewing the denial of SSI benefits by the SSA, "our focus is not so much

---

**3.** The ALJ's decision denying SSI benefits at issue in this case governed the period before July 27, 1993, when that decision was filed. Plaintiff's subsequent application for benefits did not apply to this earlier time period.

on the district court's ruling as it is on the administrative ruling." *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991) (internal quotation marks and citation omitted). In reviewing the district court's decision, "we undertake our own plenary review of the administrative record," *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) (internal quotation marks and citation omitted). However, in examining the ALJ's decision, "[i]t is not our function to determine *de novo* whether [plaintiff] is disabled," *id*. Rather, we must determine whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir.1997) (internal quotation marks and citation omitted); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (internal quotation marks and citation omitted).

The Social Security Act defines "disability" in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA has promulgated administrative regulations for determining when a claimant meets this definition.

First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." 20 C.F.R. § 404.1520. If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed, the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity"[4] to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work." *See Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.1996); 20 C.F.R. §§ 404.1520, 416.920.

In the instant case, the ALJ determined that plaintiff suffered from a severe impairment not listed in Appendix 1.[5] However, he found that she was not disabled within the meaning of the Act because she was capable of performing "sedentary" work.[6] Plaintiff suggests that this conclusion is unsupported by the record and is tainted by legal error.

## A. Legal Standards for Weighing the Evidence

### 1. Credibility of Plaintiff's Testimony

In evaluating plaintiff's impairments and her residual functional capacity, the ALJ considered plaintiff's own testimony about her symptoms and limitations and found that testimony to be "exaggerated." He observed that "[s]he did not appear to be in discomfort while sitting and there was no sign of breathing abnormalities." Referring to her very limited work history, he added that her "mo-

---

4. SSA defines "residual functional capacity" as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 416.945(a).

5. Citing her history of chronic obstructive pulmonary disease and examinations indicating that she was significantly overweight, the ALJ concluded that these were severe impairments because they imposed more than slight limitations

on her ability to do basic work-related activities. *See* 20 C.F.R. § 416.921.

6. Sedentary work is the least rigorous of the five categories of work recognized by SSA regulations. These include "very heavy," "heavy," "medium," "light," and "sedentary." *See* 20 C.F.R. § 404, Subpt. P, App. 2. Sedentary work is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects. *See* 20 C.F.R. § 404.1567(a).

tivation for work appears to be questionable." Nevertheless, in light of her hospitalization for treatment of painful varicose veins, the ALJ stated that he would give her "the benefit of doubt" in finding that her condition limited her to doing sedentary work.

### a. Plaintiff's Demeanor

■ Plaintiff contends that the ALJ erred as a matter of law in evaluating the credibility of her testimony based in part upon his observations of her physical demeanor during the administrative hearing. However, SSA regulations expressly provide that "observations by our employees and other persons" will be treated as evidence. 20 C.F.R. § 416.929(c)(3). ALJs are instructed in a Social Security Ruling interpreting 20 C.F.R. § 416.929(c)(3) that "[i]n instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96–7p, 61 Fed.Reg. 34,483, at 34,486 (1996) ("Evaluation of Symptoms in Disability Claims: Assessing Credibility of an Individual's Statements"). Although we have held that an "ALJ's observation that [a claimant] sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight," see Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 643 (2d Cir.1983), we have not held that it is always error for an ALJ to take account of a claimant's physical demeanor in weighing the credibility of her testimony as to physical disability. Although such observations should be assigned only "limited weight," there is no per se legal error where the ALJ considers physical demeanor as one of several factors in evaluating credibility. We are satisfied that the ALJ here did not afford this observation any improper significance.

### b. Plaintiff's Work History

■ Plaintiff contends that the ALJ erred as a matter of law by pointing to her poor work history as a basis for not crediting her testimony in full. She also suggests that the ALJ's reference to her work history "reflected bias toward a whole class of claimants." Appellant's Brief at 18. We disagree.

SSA regulations provide that the fact-finder "will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. § 416.929(c)(3). Moreover, ALJs are specifically instructed that credibility determinations should take account of "prior work record." SSR 96–7p, 61 Fed.Reg. 34,483, at 34,486 (1996). There is no suggestion in SSA regulations that an ALJ may only consider favorable work history in weighing the credibility of claimant testimony. Just as a good work history may be deemed probative of credibility, poor work history may prove probative as well. Logically, poor work history could support one of two conclusions. On the one hand, just as a good work history may be deemed probative of credibility, a poor work history can reasonably be deemed to have the opposite significance. However, a poor work history might also support an inference that a claimant's testimony of disability is truthful. A claimant's failure to work might stem from her inability to work as easily as her unwillingness to work. Therefore, a consideration of work history must be undertaken with great care. An ALJ should explore a claimant's poor work history to determine whether her absence from the workplace cannot be explained adequately (making appropriate a negative inference), or whether her absence is consistent with her claim of disability. In any event, it bears emphasizing that work history is just one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony.

Plaintiff directs our attention to a decision of the United States Court of Appeals for the Seventh Circuit, in which that court found that an ALJ's treatment of a claimant's poor work history suggested bias on the part of the ALJ. See Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir.1996). Rather than stating a categorical rule, we believe the Seventh Circuit's holding in Sarchet is best confined to the particular circumstances of that case. Sarchet is easily distinguished both because the court did not address the specific SSA regulations dealing with assessment of the

credibility of claimant testimony and because in that case there were other factors strongly tending to suggest bias—factors absent in the case at bar. *See id.* (finding that ALJ completely ignored, among other things, claimant's "long list of medical ailments"). In any event, *Sarchet* is not controlling in this Circuit, and plaintiff does not draw to our attention any Second Circuit authority for the proposition that consideration of negative work history is somehow precluded. We conclude that the ALJ did not commit legal error by taking account of plaintiff's limited work history as one factor in assessing the credibility of her testimony regarding her symptoms.

### 2. Treating Physician Testimony

▋ Plaintiff also claims that the ALJ applied an incorrect legal standard in weighing the opinion of her treating physician against the other medical evidence. Because it is not entirely clear what legal standard the ALJ applied, and because we find that the ALJ and the SSA Appeals Council failed to follow SSA regulations requiring a statement of valid reasons for not crediting the opinion of plaintiff's treating physician, we conclude that a remand is necessary in order to allow the ALJ to reweigh the evidence.

Prior to 1991, our case law established a so-called "treating physician rule" giving substantial weight to the treating physician's opinion as against other medical evidence. *See Schisler v. Sullivan,* 3 F.3d 563, 565 (2d Cir.1993) (*"Schisler III"*) (citing *Bluvband v. Heckler,* 730 F.2d 886, 892–93 (2d Cir.1984); *Gold v. Secretary of Health, Educ. & Welfare,* 463 F.2d 38, 42 (2d Cir.1972)). In 1991, however, SSA promulgated new regulations entitled "Standards for Consultative Examinations and Existing Medical Evidence," which set forth criteria for weighing treating physician opinions in disability cases. *See* 56 Fed.Reg. 36,932 (1991) (the "1991 Regulations"). These new regulations "accord[ed] less deference to unsupported treating physician's opinions" than did our previous case law. *See Schisler III,* 3 F.3d at 567.

The 1991 Regulations were promptly challenged. Two district courts ruled that the regulations were binding in administrative

proceedings but that our treating physician rule continued to govern disability rulings on appeal in the federal courts of this Circuit until we declared otherwise. *See id.* at 566–67 (discussing *Schisler v. Sullivan,* No. 80–CV–572E, 1992 WL 170736 (W.D.N.Y. July 8, 1992) and *Aldrich v. Sullivan,* 800 F.Supp. 1197 (D.Vt.1992)). In *Schisler III,* we upheld the new regulations and clarified that they superseded the more deferential treating physician rule previously in force in this Circuit. *Id.* at 568.

The decision of the ALJ in the instant case was filed several weeks *before* our decision in *Schisler III.* For this reason, it is possible that the ALJ was unsure which legal standard he was bound to apply—the new SSA regulations or the treating physician rule found in our case law. In any event, it is far from clear what standard he chose to apply, and what weight, if any, he ultimately assigned to the opinion of plaintiff's treating physician. Indeed, it does not appear that the ALJ applied *either* standard correctly.

The 1991 Regulations provide as follows:

*Treatment relationship.* Generally, we give more weight to opinions from your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The various factors applied when the treating physician's opinion is not given controlling weight include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. *Id.* In addition, the 1991 Regulations provide that the Commissioner "will always give good reasons in our notice of determination or decision for

the weight we give [claimant's] treating source's opinion." *Id.*

Whereas under the 1991 Regulations the treating physician's opinion is deemed controlling only if it is well-supported by clinical evidence, under our prior "treating physician rule" the opinion of the treating physician was deemed binding unless contradicted by substantial evidence, and even if contradicted was entitled to "extra weight." *See Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986) ("*Schisler I* ").

In determining plaintiff's residual functional capacity, the ALJ stated that "pursuant to *Schisler v. Bowen* [851 F.2d 43 (2d Cir.1988) ("*Schisler II* ")] the opinion of a treating physician is considered binding unless contradicted and if contradicted entitled to greater weight." Thus, the ALJ appeared to invoke the treating physician rule that antedated the 1991 Regulations. Even though the treating physician rule was more deferential to treating physician opinions than the new regulations, the ALJ apparently assigned little or no weight to Dr. Jobson's opinion as a treating physician. The ALJ cited two reasons for discounting Dr. Jobson's opinion. First, he concluded that the questionnaire completed by Dr. Jobson "is not a statement of the treating physician that is binding on me because of the lack of clinical findings to support these conclusions."[7] Second, he noted that the record did not establish "the frequency of followups to Dr. Jobson or even if the claimant has seen Dr. Jobson on a regular basis since October 1992."

The ALJ's reference to the frequency and duration of Dr. Jobson's treating relationship with plaintiff appears to relate to the first of the factors that the ALJ is required to address under the 1991 Regulations when the treating physician's opinion is not given controlling weight—*i.e.,* the frequency of examination and the length, nature, and extent of the treatment relationship. *See* 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i). It is unclear why, if the ALJ was attempting to

apply the old treating physician rule, he would have relied so heavily upon the supposed short duration of the treating relationship. Asked at oral argument to resolve this apparent anomaly, counsel for the Commissioner was not able to offer an explanation. Moreover, if the ALJ was attempting to apply the old treating physician rule, it is entirely unclear whether he assigned any "extra weight" to the treating physician's opinion, as that rule required. *See Schisler I,* 787 F.2d at 81. Thus, under either rule, the ALJ's decision appears tainted by legal error. That is, his analysis seems flawed under the old treating physician rule in that it apparently fails to assign extra weight to the treating physician's opinion, and flawed under the 1991 Regulations as well in that the ALJ failed to consider all of the factors cited in the regulations.

■■■■  In light of these circumstances, we cannot be certain whether or not the Commissioner's ultimate conclusion that plaintiff was not disabled is supported by substantial evidence. "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987). Where application of the correct legal standard could lead to only one conclusion, we need not remand. *Id.* However, on this record, we cannot say with certainty what weight should be assigned, pursuant to the 1991 Regulations, to the opinion of plaintiff's treating physician, or whether further clarification of the record with these regulations in mind might alter the weighing of the evidence. It is for the SSA, and not this court, to weigh the conflicting evidence in the record. *See Miller v. Chater,* 99 F.3d 972, 978 (10th Cir.1996) (an "appeals court does not reweigh the evidence in social security cases").

---

7.  Other than asking a series of "yes" or "no" questions, the questionnaire did not solicit clinical findings or any further explanation of Dr. Jobson's responses. The ALJ also questioned the reliability of the questionnaire completed by Dr. Jobson because he found that the questions appeared to "solicit positive responses about symptoms."

Nor does it appear that the Commissioner provided "good reasons" for discrediting Dr. Jobson's opinion, as the 1991 Regulations require. The lack of clinical findings complained of by the ALJ did not justify the failure to assign at least some weight to Dr. Jobson's opinion, for two reasons. First, even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from Dr. Jobson *sua sponte*. *See Perez*, 77 F.3d at 47 ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel ....") (citations omitted). Second, notwithstanding the ALJ's failure to solicit further information from Dr. Jobson, plaintiff *did* provide such additional medical evidence, in the form of Dr. Jobson's treatment notes, to the Appeals Council.[8] Similarly, Dr. Jobson's treatment notes appear to address the ALJ's doubts as to the duration of plaintiff's treating relationship with Dr. Jobson. The notes appear to indicate that Dr. Jobson examined plaintiff at least seven times over ten months, beginning in October 1992, and that plaintiff was treated at the Mid–Hudson clinic, where Dr. Jobson worked, a total of 15 times over that same period.[9] Therefore, by the time that the Commissioner's decision became final upon denial of review by the Appeals Council, the only two reasons indicated by the ALJ for discounting Dr. Jobson's opinion were no longer valid. We hold that the Commissioner's failure to provide "good reasons" for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.

In sum, because we are unsure exactly what legal standard the ALJ applied in weighing Dr. Jobson's opinion, because application of the correct standard does not lead inexorably to a single conclusion, and be-cause the Commissioner failed to provide plaintiff with "good reasons" for the lack of weight attributed to her treating physician's opinion as required by SSA regulations, we conclude that the proper course is to direct that this case be remanded to the SSA to allow the ALJ to reweigh the evidence pursuant to the 1991 Regulations, developing the record as may be needed. Because we conclude that a remand is necessary, there is no need to rule upon the appeal from denial of plaintiff's Rule 60(b) motion. *See Raab v. Taber Instrument Corp.*, 546 F.2d 522, 524 (2d Cir.1976) (per curiam).

**B. Development of the Record Regarding Mental Disability**

Plaintiff suggests that the ALJ failed adequately to develop the record concerning the possibility that plaintiff was mentally disabled. However, we find little indication in the record suggesting a disabling mental disorder during the period in question that would have obliged the ALJ to develop the record further. Although the record indicated that plaintiff was taking medication for anxiety symptoms, treatment notes from the Mid–Hudson clinic in 1991 reported that her symptoms were under "adequate control" and that the medication produced "good results." Moreover, plaintiff's own treating physician, Dr. Jobson, indicated in the questionnaire submitted to the ALJ that her physical condition and her reaction to it did *not* appear to be manifested in "increased nervousness, depression or anxiety." We agree with the district court that the ALJ adequately developed the record with regard to plaintiff's alleged mental disability.

**C. Remand for New and Material Evidence**

Plaintiff's claim that the district court erred in failing to remand to the SSA

---

8. Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). This evidence becomes part of the administrative record on appeal to the federal courts when the Appeals Council denies review. *See Perez*, 77 F.3d at 45.

9. There was some dispute at oral argument over the exact number of visits attributable to Dr. Jobson, as opposed to nurse-practitioners and others at the clinic, based upon Dr. Jobson's treatment notes. To the extent that the treatment notes may have been unclear, it was of course the Commissioner's responsibility to clarify the record—all the more so because the Commissioner bears the burden of proof in establishing that plaintiff had the residual functional capacity to engage in sedentary work. *See Perez*, 77 F.3d at 46 (citing *Carroll*, 705 F.2d at 642).

for consideration of allegedly new and material evidence is similarly unavailing. A court may order the Commissioner to consider additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). Plaintiff submitted to the district court treatment reports by a psychologist, Dr. Wilson Meaders, which described her as suffering from, *inter alia*, depression and "intense social phobia." However, plaintiff commenced treatment with Dr. Meaders in August 1993, several months before the Commissioner's decision became final on December 30, 1993. Plaintiff has failed to justify the delay in submitting these reports, and therefore has not met the statutory requirement of demonstrating good cause. *See Lisa v. Secretary of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir.1991) ("Good cause for failing to present evidence in a prior proceeding exists where, as here, the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding.") (internal quotation marks and citations omitted). Plaintiff's claim that the district court should have remanded for consideration of new evidence is therefore without merit.

We have considered all of plaintiff's remaining claims and we find them to be entirely without merit.

### III.

To summarize:

(1) The judgment of the district court is affirmed insofar as it upheld the ALJ's credibility findings with respect to plaintiff's testimony at the administrative hearing. Accordingly, the ALJ need not reweigh plaintiff's testimony.

(2) The judgment of the district court is affirmed insofar as it found no need to instruct the ALJ to develop the record with regard to plaintiff's mental condition during the relevant period.

(3) Because we are unable to determine with certainty what legal standard the ALJ applied in weighing the medical opinion of plaintiff's treating physician, because applying the correct standard does not lead to only one possible conclusion, and because the ALJ failed to supply "good reasons" for discounting that opinion as required by SSA regulations, we vacate the judgment of the district court insofar as it upheld the Commissioner's decision to deny SSI benefits and remand to the district court with instructions to remand to the SSA so that the evidence can be reweighed pursuant to the 1991 Regulations.

(4) In light of our decision that a remand to the SSA is necessary, we need not act on the appeal from the judgment of the district court denying plaintiff's Rule 60(b) motion for relief from the judgment.