Melvin LEPAK, on behalf of Barbara A. LEPAK, Deceased, Plaintiff,

v.

Jo Ann B. BARNHART, Commissioner of Social Security, Defendant.

No. 01–CV–6340 CJS.

United States District Court, W.D. New York.

April 18, 2002.

Mark M. McDonald, Bond & McDonald, P.C., Geneva, New York, for plaintiff.

Michael A. Battle, United States Attorney, by Christopher V. Taffe, Assistant United States Attorney, Rochester, New York, for defendant.

DECISION AND ORDER

SIRAGUSA, District Judge.

## I. INTRODUCTION

The plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") who denied Barbara A. Lepak's application for disability benefits. Before the Court is the Commissioner's motion for judgment on the pleadings (docket # 4) seeking an order affirming the Commissioner's decision, and plaintiff's motion (docket # 9) for either judgment on the pleadings and remand for calculation of benefits, or, in the alternative, remanding the case for further development of the record and application of the proper legal standards. For the reasons stated below, the Court grants the plaintiff's motion to reverse the Commissioner's decision and to remand for further development of the record pursuant to sentence six of 42 U.S.Code § 405(g), and denies the Commissioner's motion for judgment on the pleadings.

## II. PROCEDURAL BACKGROUND

Claimant Barbara A. Lepak ("Decedent") filed an application for disability insurance benefits on March 6, 1998. The application was denied initially and on reconsideration. The decedent filed a request for a hearing before an Administrative Law Judge ("ALJ") and the hearing was held on December 30, 1998. On March 23, 1999, the ALJ found the decedent retained the residual functional capacity to perform her past relevant work as a dispatcher. Following the decedent's death on April 26, 2001, Melvin Lepak, as the decedent's surviving spouse, was sub-stituted as the plaintiff herein pursuant to 42 U.S.Code § 404(d). The ALJ's decision became the Commissioner's final decision when the appeals Council denied the plaintiff's request for review on June 1, 2001. The plaintiff commenced a civil action in this Court on July 3, 2001.

## III. DECEDENT'S WORK HISTORY

The decedent, who was born on July 11, 1948, claimed she had been disabled since February 1, 1989. She testified before the ALJ that she had been previously employed by IBM as a dispatcher for service calls. She described this employment to the ALJ as "video terminal work." She started that work in June of 1980 and stopped working at that job on July 11, 1988. The dispatching job required her to remain seated in a chair all day, answer the phone, and type information into the computer system. While at work, due to her medical problems, she experienced alterations in vision, blood sugar changes, and vomiting. She also testified that she could not obtain a full night's rest due to her medical difficulties, and, therefore, was unable to maintain a daily work schedule. She was last insured for Social Security benefits as of December 31, 1994.

## IV. MEDICAL HISTORY

The decedent was diagnosed with diabetes. From 1980 through April 1993, she was treated periodically by Dr. Newton Galusha. Until the summer of 1986, Dr. Galusha thought that the decedent was relatively asymptomatic as to her diabetes and could work without restrictions. However, according to a report from Dr. Galusha dated December 14, 1988, the decedent experienced increased difficulties during the fall of 1987, and was hospitalized three times for problems related to her diabetes. An EEG test, which was administered to her, showed generalized proximal activity compatible with a seizure disorder. Dr.

Galusha described the decedent's primary problem as arising from her complaint of decreased visual acuity, for which he referred her to Dr. Debra Duer. Dr. Galusha opined in his December 14, 1987 letter that her ability to return to work duties depended on her visual acuity.

On September 16, 1988, Dr. Galusha reported that the decedent was suffering from multiple medical problems, including: insulin dependent diabetes; seizure disorder; migraine variant syndrome with visual disturbance; and reoccurring gastrointestinal problems. He additionally detailed sixteen different medications she was taking for these problems.

In January 1990, the decedent was hospitalized again, this time for nausea, vomiting and dehydration. At the time, her diabetes remained under poor control. She experienced a further hospitalization in October 1990 for removal of her right kidney.

During the course of his treatment, Dr. Galusha made extensive notes regarding the decedent's medical complaints, including inability to sleep, diarrhea, depression, seizures, drug reactions and vision problems. He also noted she had paresthesia in her feet.

On September 10, 1993, the decedent saw Dr. Lloyd Fasset. Dr. Fasset noted a bruise on the right side of the decedent's neck and that the rhythm of her heart, although fairly regular, was somewhat fast. Further, he reported that she had one to two millimeters of pretibial edema.

The decedent was seen by Dr. Luke Chen in late 1992 and 1994. However, the majority of his notes are illegible. She then began treatment with Dr. Robert Taylor, III, but the record does not contain either his notes, nor the dates of his treatment.

In October 1997, the decedent began treating with Dr. John Brosnan, an orthopedic physician, to whom she was apparently referred by Dr. Taylor. Dr. Brosnan had x-rays of her foot taken, which revealed an old fracture that evidently had never been treated. The x-rays also showed some bone destruction. Dr. Brosnan's physical examination revealed swelling over the decedent's right foot and tenderness. An MRI of her foot established multiple and significant abnormalities, diffuse soft tissue edema around her ankle joint, including an abnormal soft tissue process in her mid-foot, tarsal bones with localized soft tissue edema. Dr. Brosnan opined that the decedent had a Charcot foot. In follow-up visits, Dr. Brosnan noted that the decedent continued to experience pain off and on with swelling over her foot.

By affidavit filed January 25, 2002, the plaintiff's counsel informed the Court that after discovering that certain medical records from IBM were not part of the record on appeal, he contacted IBM and obtained the records, which he attached to his affidavit. He also forwarded copies of the IBM records to counsel for the Commissioner and asked him to stipulate to a remand under sentence six of 42 U.S.Code § 405(g), however counsel declined to do so.

Of particular significance, as to the records that were not part of the record on appeal, was a report from Dr. Galusha dated December 30, 1998, which reads, in pertinent part,

> She continues to have visual disturbances which we have not been able to control even with preventive medicine and this interferes with her use of a computer screen. She continues to have frequent bowel movements which require the close proximity of a bathroom and frequent interruptions of her job

situation. Her diabetes also requires certain dietary restrictions and time restrictions.

I therefore feel that Barbara is totally disabled at this point in time and it is not clear whether these multiple conditions will be controlled in the future to an extent that would allow full time employment. For the present however, I feel there is not an expectation that she can work on any regular predictable basis without interruption. There is no single condition that makes her totally disabled but [it] is the combination of her multiple disorders that result in the above opinion.

Newton C. Galusha, M.D., report (Dec. 30, 1988) (attached as Exhibit A to McDonald aff.). The additional medical information also contains a letter from Dr. Deur, another of the deceased's treating physicians, in which she states that, "Ms. Lepak is under medical treatment at the present time and until her diabetes is medically stable, her vision will be impaired and fluctuating." Debra Deur, M.D. letter (Dec. 22, 1987) (Attached as Exhibit A to McDonald aff.).

## V. Discussion

### A. The Standard of Review

■ The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998). It is well settled that

it is not the function of a reviewing court to determine *de novo* whether the claimant is disabled. Assuming the Secretary [Commissioner] has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence; if they are supported by such evidence, they are conclusive.

*Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 231–32. Where there are gaps in the administrative record or where the Commissioner has applied an incorrect legal standard, remand for further development of the record may be appropriate. *Id.* at 235. However, where the record provides persuasive proof of disability and a remand would serve no useful purpose, the Court may reverse and remand for calculation and payment of benefits. *Id.*

### B. The Standard for Finding a Disability

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Social Security Act § 223(d)(1)(A), 42 U.S.C. § 423(d)(1)(A); *Schaal,* 134 F.3d at 501. The Social Security Administration ("SSA") has promulgated regulations which establish a five-step sequential analysis an ALJ must follow:

First, the SSA considers whether the claimant is currently engaged in substantial gainful employment. If not, then the SSA considers whether the claimant has a "severe impairment" that significantly limits the "ability to do basic work activities." If the claimant does suffer such an impairment, then the SSA determines whether this impairment is one of those listed in Appendix 1 of the regulations. If the claimant's impairment is one of those listed,

the SSA will presume the claimant to be disabled. If the impairment is not so listed, then the SSA must determine whether the claimant possesses the "residual functional capacity" to perform his or her past relevant work. Finally, if the claimant is unable to perform his or her past relevant work, then the burden shifts to the SSA to prove that the claimant is capable of performing "any other work."

*Schaal,* 134 F.3d at 501 (citations and internal quotation marks omitted).

## C. The ALJ's Decision

Using the sequential evaluation process, the ALJ found that the decedent had not engaged in any substantial gainful activity since February 1, 1989. The ALJ determined, at the second step, that the decedent did have a severe impairment during the period from February 1, 1989 through December 21, 1994 (the date she was last insured for Title II disability benefits). However, at the third step, the ALJ found that the decedent's severe impairment did not meet or equal one of the impairments listed in, or was not medically equal to one listed in, Appendix 1, Subpart P., Regulations No. 4.

Proceeding to the fourth step of the sequential analysis, the ALJ found that the decedent was able to return to her past relevant work as a dispatcher. Having found her not disabled, the ALJ concluded his analysis and did not proceed to the fifth step.

The Commissioner points out that sedentary work, the kind of work the ALJ found the decedent was capable of performing, is defined a work that involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of

walking and standing if often necessary in carrying out the job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); *see also* Memorandum of Law in Support of the Commissioner's Cross–Motion for Judgement on the Pleadings ("Commissioner's Memorandum") at 7, n. 3.

## D. Analysis

On June 9, 1980, Congress amended the original remand provision of 42 U.S.C. § 405(g) by providing conditions under which remand is deemed appropriate for the taking of additional evidence. A claimant must show that (i) the evidence is in fact new and material, and (ii) good cause exists for failure to produce that evidence in prior proceedings. *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir. 1983). The Court finds that the medical evidence offered by the plaintiff's counsel is new and material and further finds good cause exists for the failure of the plaintiff's former counsel to obtain and present the evidence. In reaching this determination, the Court is of course mindful of the "treating physician rule," which requires that the opinion of a treating physician be given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence, and further directs that an ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan,* 168 F.3d 72, 78–79 (2d Cir.1999). Although the Assistant U.S. Attorney who argued the case in court did not consent to remand, he frankly and admirably acknowledged the probative value of the evidence presented by the plaintiff's counsel.

## VI. Conclusion

Accordingly, the plaintiff's motion for judgment on the pleadings (docket # 9) is

denied, the plaintiff's motion for remand under sentence six of 42 U.S.Code § 405(g) for consideration of the new and relevant evidence presented by the plaintiff's counsel, and the Commissioner's cross-motion for judgment on the pleadings (docket # 4) is denied. This case is remanded under sentence six of 42 U.S.C. § 405(g).

It Is So Ordered.