Ginger HART o/b/o Ginger E. HART, Plaintiff,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant

No. 00–CV–6327 CJS.

United States District Court, W.D. New York.

Nov. 8, 2001.

Catherine M. Callery, Esq., Public Interest Law Office of Rochester, Rochester, for the Plaintiff.

Kathleen M. Mehtretter, United States Attorney, By Christopher V. Taffe, Rochester, of Counsel: Barbara L. Spivak, Chief Counsel—Region II, Ivelisse Clausell, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, for the Defendant.

DECISION AND ORDER

SIRAGUSA, District Judge.

## I. INTRODUCTION

Plaintiff brought this action on behalf of her minor daughter pursuant to 42 U.S.Code § 405(g) to review the final determination of the Acting Commissioner of Social Security ("Commissioner") who denied plaintiff's application for disability benefits. Before the Court is the Commissioner's motion for judgment on the pleadings (docket # 8) seeking an order affirming the Commissioner's denial of benefits, and plaintiff's cross-motion for judgment

on the pleadings (docket # 10) seeking an order reversing the Commissioner's decision and remanding for calculation of benefits. For the reasons stated below, the Court denies the Commissioner's motion and grants plaintiff's motion.

## II. BACKGROUND

Ginger E. Hart ("Ginger") was born on February 24, 1984, making her 17 years old now. Plaintiff claims her daughter is disabled and entitled to benefits under section 1602 of the Social Security Act, Supplemental Security Income for the Aged, Blind, and Disabled (codified at 42 U.S.Code § 1381a). Plaintiff protectively filed an application for supplemental security income on October 6, 1996. The application was denied initially and on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") and the hearing was held on April 6, 1998. On April 20, 1998, the ALJ found Ginger was not eligible for supplemental security income. That decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 19, 2000. Plaintiff commenced a civil action in this court on July 13, 2000. Oral argument on plaintiff's and defendant's motions for judgment on the pleadings was held before the Court on October 18, 2001. In considering the Commissioner's and plaintiff's motions for judgment on the pleadings, the Court has carefully considered the pleadings, the entire administrative record, and the comments of counsel made during oral argument.

## III. DISCUSSION

### A. THE STANDARD OF REVIEW

The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998). It is well settled that

it is not the function of a reviewing court to determine *de novo* whether the claimant is disabled. Assuming the Secretary [Commissioner] has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence; if they are supported by such evidence, they are conclusive.

*Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 231–32. Where there are gaps in the administrative record or where the Commissioner has applied an incorrect legal standard, remand for further development of the record may be appropriate. *Id.* at 235. However, where the record provides persuasive proof of disability and a remand would serve no useful purpose, the Court may reverse and remand for calculation and payment of benefits. *Id.*

### B. THE STANDARD FOR DETERMINING DISABILITY FOR A CHILD

The Social Security Act's Supplemental Security Income ("SSI") program is a federal program designed to meet the needs of needy aged, blind, or disabled individuals who meet certain statutory income and resource limitations. *See* 42 U.S.Code § 1381. In 1996 Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act which established new standards by which child SSI claims based on a disability are adjudicated. The new statute provides that,

(i) An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individu-

al has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.Code § 1382c(a)(3)(C)(i). This section was added by Public Law 104–193, *see* 62 Fed.Reg. 6409 (Feb. 11, 1997), which also required the Commissioner to revise his regulations for determining a child's disability. The parties agree that these regulations, first published in the Federal Register on February 11, 1997, *see* 62 Fed. Reg. 6407–6432 (Feb. 11, 1997), and corrected by 62 Fed.Reg. 13733 (Mar. 21, 1997), are applicable to this case. Under those regulations, the Commissioner determines whether the child's impairment or combination of impairments meets, medically equals or functionally equals, in severity any impairment contained in the listings at 20 Code of Federal Regulations, Part 404, Subpart P, Appendix 1. If the impairment or combination of impairments does not meet or medically equal a listed impairment, the Commissioner then must determine whether the child's impairment "functionally equals" a listed impairment. The steps for a disability determination are set out in the Federal Register as follows:

§ 416.924 **How we determine disability for children.** (a) Steps in evaluating disability. We consider all relevant evidence in your case record when we make a determination or decision whether you are disabled. If you allege more than one impairment, we will evaluate all the impairments for which we have evidence. Thus, we will consider the combined effects of all your impairments upon your overall health and functioning. We will also evaluate any limitations in your functioning that result from your symptoms, including pain (see § 416.929). When you file a new application for benefits, we use the evaluation process set forth in (b) through (d) of this section. We follow a set order to determine whether you are disabled. If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924 *as published in* [1] 62 Fed.Reg. 6408, 6421–22 (Feb. 11, 1997).

To determine functional equivalence, the Commissioner employs four methods. The first is called the limitation of specific functions. Under this method, the Commissioner will find that a child's impairments are functionally equivalent in severity to a listed impairment because of extreme limitation of one specific function, such as walking or talking. *See* 20 C.F.R.

---

**1.** The Court will refer to the version of 416.926a printed in the Federal Register of March 11, 1997, since the version printed in the present C.F.R. is organized differently.

§ 416.926a(b)(1) *as published in* 62 Fed. Reg. 6408, 6424–28 (Feb. 11, 1997).

The second method is called broad areas of development or functioning. As the name implies, the Commissioner will evaluate the effect of the child's impairments in broad areas of development or functioning. For children between the ages of three and eighteen, the Commissioner will evaluate their development in the areas of cognitive/communicative function, motor function, social function, personal function and concentration, persistence or pace. *See* 20 C.F.R. 416.926a(c)(4) *as published in* 62 Fed.Reg. 6408, 6425–26. If a child has extreme limitations in *one* area, or marked limitation in *two* areas of functioning, the Commissioner will find that the child's impairment is functionally equivalent in severity to a listed impairment. *See* 20 C.F.R. § 416.926a(b)(2) *as published in* 62 Fed.Reg. 6408, 6425. It is this second method that was employed in the case before the Court. As to that method, while the ALJ found that Ginger has a marked impairment in the area of social functioning, Record of Proceedings ("R.") at 19, plaintiff claims that the ALJ erred by not finding Ginger has an extreme impairment.

The third method is called "episodic impairments," and is used to evaluate chronic impairments characterized by frequent illness or attacks. Finally, the fourth method evaluates limitations related to treatment or medication effects. Neither of these two methods was used here. *See* R. at 20.

### C. The ALJ's Decision

After evaluating the evidence, the ALJ determined as the first step in the sequential evaluation process that Ginger had never done any work or earned any wages. R. at 19. *See* 20 C.F.R. § 416.924(a) *as published in* 62 Fed.Reg. 6408, 6421. In step two, the ALJ found that Ginger's impairments were "severe" within the meaning of the Social Security Act, "as they are more than slight abnormalities causing more than minimal functional limitations. Specifically, those impairment are Attention Deficit Disorder (ADD), Oppositional Defiant Disorder (ODD), and a learning disorder characterized by emotional disturbance." R. at 19.

The ALJ reached the third step of the sequential evaluation process and determined that Ginger's impairments did not meet or equal those listed in Appendix 1, Subpart P of Regulation No. 4. The ALJ found that Ginger did not have a marked or extreme limitation of any specific function. He then assessed whether she had any disabling broad functional limitations, including cognitive/communicative, motor, social, personal, and concentration, persistence or pace. R. at 20; *see* 20 C.F.R. § 416.926a(c)(4) *as published in* 62 Fed. Reg. 6408, 6426. He examined these areas in detail in his decision, and found no disabling limitations. He concluded, therefore, that she was not eligible for SSI benefits.

### D. Evidence Of Ginger's Social Functioning

The first Committee on Special Education from Ginger's school in June 1995 (fourth grade) noted her history of "pervasive social delays and lack of self control." R. at 133. Specifically, their report stated on this point:

Information presented indicates that Ginger is struggling with social development. She has difficulty expressing her feelings and will often separate herself from others. She has a low self-esteem and often seeks attention through deviant and aggressive behaviors. Her behaviors range from flat and lethargic to aggressive verbally and physically. Gin-

ger works hard to distance herself from others and rarely smiles. She had difficulty trusting others and cannot express her wants and needs clearly. . . .

Minutes of Committee on Special Education (June 27, 1995) at 1 ( R. at 133). At that time, she was placed in a 15:1 program (a classroom with 15 students and one teacher). R. at 134. Her individualized education plan ("IEP") noted she needed to improve her peer and adult relations. R. at 142. It also noted that she "[i]nteracts appropriately 1:1 with adult support." *Id.*

The following year, she was suspended for assaulting a school sentry. R. at 105. The Superintendent of the Rochester City School District decided, however, to continue her in classification and placement. *Id.* The minutes of the Committee on Special Education indicate that "Ginger is view[ed] as being socially immature." R. at 112. Her classroom teacher indicated on a form dated May 1995 that Ginger had two incidents of aggressive behavior towards staff at the beginning of the school year. A classroom observer noted on the same form that Ginger got along fairly well with the teacher, but never spoke to any of her peers during the 45 minute observation period. R. at 169. Her classroom teacher noted that, "Ginger has problems making friends in the school. She is withdrawn in group situations." R. at 171. In a school questionnaire presented by the ALJ to Ginger's teacher on January 7, 1998, the teacher opined that Ginger had a severe emotional impairment, and that she, "frequently has arguments, has pushed staff & physically confronted [staff]," which the teacher rated as a severe impairment. R. at 187–91.

### E. ANALYSIS

Plaintiff alleges that the ALJ erred by failing to find that Ginger has an extreme impairment in the area of social functioning. The regulations provide, in part, that the domain of social functioning for 12–18 year old children includes:

(C) Social functioning (age 12 to attainment of age 18): Your ability or inability to initiate and develop friendships, to relate appropriately to individual peers and adults and to peer and adult groups, and to reconcile conflicts between yourself and peers or family members or other adults outside your family.

20 C.F.R. § 416.926a(c)(5)(v)(C) *as published in* 62 Fed.Reg. 6408, 6428 (Feb. 11, 1997).

The regulation explains that a "marked" limitation means one which is " 'more than moderate' and 'less than extreme'." 20 C.F.R. § 416.926a(c)(3)(i)(C) *as published in* 62 Fed.Reg. 6408, 6426 (Feb. 11, 1997). An "extreme" limitation is defined in the regulation as "no meaningful function in a given area." 20 C.F.R. § 416.926a(c)(3)(ii)(C) *as published in* 62 Fed.Reg. 6408, 6426 (Feb. 11, 1997). In the current version of 20 C.F.R. § 416.926a, however, the Commissioner defines extreme as, "when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (2000). Plaintiff argues that under *this* definition of extreme, "there should be no question that Ginger's impairment causes extreme social limitations." Plaintiff's memorandum at 18.

At oral argument, plaintiff conceded that the regulations first published in February 1997 (called the "interim final rules") are applicable to this case. *See also* 65 Fed. Reg. 54747, 54751 (where the Commissioner states that the interim final rules remain in effect until January 2, 2001). However, plaintiff also argued that in the later regulations (first published in September 2000), the Commissioner stated

that he was reorganizing and clarifying the provisions from the interim final rules and expanding some of his guidance. *See* 65 Fed.Reg. at 54,757. The Commissioner explained that the interim final rules defined "extreme limitation" as "having no meaningful function in a given area." *Id.* at 54,758. He then stated, "[a] commenter thought that this was a stricter standard than we intended, equivalent to a requirement that a child be completely unable to function. To clarify that this *was not* our intent, we deleted the phrase and added in the final rule that, while 'extreme' is the rating we use for the worst limitations, it does not necessarily mean a total lack or loss of ability to function. It means that the impairment very seriously limits functioning. . . ." *Id.* (emphasis added).

The Commissioner argues that the ALJ's finding that Ginger has a marked, but not extreme, limitation in social functioning is supported by substantial evidence in the Record. The Court, using the Commissioner's clarification of the meaning of his definition of this term in the interim final rules, disagrees.

The Commissioner points out that "Ginger's teachers, examining psychologists and counselors, and even her mother all noted that she was able to relate appropriately in a one-to-one situation with adults, and where trust had developed." Commissioner's reply brief at 2. However, the information in the record relied upon by the Commissioner in support of the final decision in this case supports just the opposite conclusion. For example, in Ginger's IEP for September 1995, under individual characteristics, it was noted that Ginger, "[c]an be cooperative. [H]as good days. [F]lat affect. [L]ethargic. [D]ifficulty. [T]rusting of others. [C]an be aggressive and verbally defiant." R. at 136. Later in the same document, her strengths are listed as, "[i]nteracts appropriately 1:1 with adult support," and "[r]elates appropriately when trust has been developed." R. at 142 & 144. At the same time, the reviewer noted that Ginger needed to "[d]evelop ability to cope with stress" and "[i]mprove peer and adult relations." R. at 142. Later in the same document, the reviewer noted that Ginger needed to "develop trust in significant adults" and "[w]ork cooperatively in a small group of peers." R. at 144.

In a document entitled, "Pupil Personnel Services Team Recommendations for Committee on Special Education and Review/Action," under a section entitled "Integrated Summary for Parent," Ms. Stortt wrote in June 1995, "Ginger relates 1:1 fairly well. She needs much interaction to gain trust. She has difficulty with peer relations and has had verbal and physical altercations at times." R. at 149. A Certified School Social Worker wrote in a June 1, 1995 psycho social assessment that, "Ginger does well 1:1 with adults socially. She has difficulty interacting with peers in small and large group situations. She has difficulty expressing and identifying her feelings. Mother reports Ginger's attitude needs to improve. She is easily frustrated and resorts to fighting as a coping strategy." During the hearing before the ALJ, plaintiff reported that Ginger, "talks with her friends" on the phone. R. at 39. Ginger testified that she did not like to "hang around with people— but I'll, I will say hi to them or something or we all go somewhere together." R. at 58. She also testified that she eats lunch with one of her classmates. R. at 58.

Michael Boccia, Ph.D., performed a psychiatric evaluation on Ginger in February 1997. R. at 196. During his interview with what he termed "the family," he reported that Ginger "has had significant problems with authority figures from time to time. She has also had problems mak-

ing friends and getting along with her peers, especially in school[,] but also in the neighborhood... Mother also stated that Ginger gets along well with mother and siblings." R. at 197. Dr. Boccia concluded that Ginger and her family ought to seek outpatient mental health counseling and evaluate her need for psychotropic medication "if there are serious issues of depression or withdrawal behavior." R. at 198.

The domain of social functioning for children 12 to 18 years of age includes:

> Your ability or inability to initiate and develop friendships, to relate appropriately to individual peers and adults and to peer and adult groups, and to reconcile conflicts between yourself and peers or family members or other adults outside your family.

20 C.F.R. § 416.926a(c)(5)(v)(C) *as published in* 62 Fed.Reg. 6408, 6428. As plaintiff points out in her brief, at 16–18, the record supports a finding that Ginger has a severe impairment that very seriously limits her functioning in this domain.

Based upon the Commissioner's clarification in 2000[2] of the term "severe limitation," the Court finds that the Commissioner's decision is not supported by substantial evidence. In fact, the record is clear that Ginger's disability meets the definition of "severe limitation" in the domain of social functioning.

## IV.  CONCLUSION

Accordingly, the Court grants plaintiff's cross-motion (docket # 6–1) to reverse the Commissioner's decision, grants plaintiff's cross-motion to remand for calculation of benefits (docket # 6–2) and denies the

Commissioner's motion for judgment on the pleadings (docket # 4).

**IT IS SO ORDERED.**

---

**2.**  Obviously in reaching his decision, the ALJ     did not have the benefit of this clarification.