DECISION
Before this Court is an appeal from a March 5, 2001, decision by the Rhode Island Department of Human Services (DHS), denying Donna Desrosiers' (plaintiff) application for Medical Assistance (MA) benefits. The plaintiff seeks reversal of the DHS decision denying her benefits. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
The plaintiff is a forty-six year old woman with a 9th grade education who later received her GED. As part of her application for MA benefits, the plaintiff submitted an Information for Determination of Disability Form (AP-70). In this form, the plaintiff indicated that she had worked at various jobs including the shoe department at Ames, as a jewelry solderer, and as a carder. In 1999, the plaintiff had to leave work due to medical problems and later applied for MA benefits due to disability. As part of her application, the plaintiff included a list of symptoms including, but not limited to, sore feet, legs, and hands; fatigue; and headaches. Since May of 1995, the plaintiff has been treated at Tri-Town Health Center. The plaintiff submitted two MA-63 Physician's Examination Reports. Both reports were prepared by Dr. Carol Cancro, the plaintiff's treating physician. The first MA-63 completed by Dr. Cancro on March 31, 2000, indicated that the plaintiff suffers from diabetes mellitus neuropathy[1], reactive airways disease (RAD), asthma, and polyarthralgia. The plaintiff was also diagnosed with Type II diabetes. Her symptoms include polydipsia (excessive thirst), dry mouth, wheezing, and back and joint pain. The second MA-63 completed by Dr. Cancro on June 6, 2000 indicated the previously diagnosed diabetic neuropathy and RAD. Additionally, the plaintiff was diagnosed with sinusitis, hypothyroidism, and arthralgias with diffuse back and joint pain. Dr. Cancro also stated that the plaintiff's diabetes was "OOC" (out of control). According to both MA-63 forms, the systems affected included musculoskeletal, special senses and speech, respiratory, cardiovascular, digestive, genitourinary, endocrine, and neurological.
The plaintiff's functional limitations during an eight-hour period included standing for one to two hours, walking for three hours, sitting for four hours, lifting up to ten pounds, and ability to bend for three hours. All of the plaintiff's work-related mental abilities were described as either "slightly limited" or "moderately limited." The plaintiff's prognosis in March of 2000 was "marginal," and her most recent prognosis in June of 2000 was termed "guarded."
The plaintiff also submitted objective medical evidence to support these findings. According to the Tri-Town Health Center lab results, the plaintiff had high blood sugar levels in June of 1999, during several visits in December of 1999, and in February and October of 2000. As a result, the plaintiff was prescribed glucotol and was referred to Saint Joseph Hospital for diabetic education. The plaintiff was also prescribed Elavil and Daypro for arthraglias and musculoskeletal pain.
On January 6, 2001, the plaintiff was examined by Dr. Palumbo at the request of Social Security. Although Dr. Palumbo did not have the plaintiff's medical records, prescription information, or current lab results indicating an elevated ESR, he issued his report to the DHS. Dr. Palumbo's report indicated no wheezing or shortness of breath, no signs of arthritis and found no sequelae of diabetes or musculoskeletal abnormalities. Relying on Dr. Palumbo's report and the MART evaluation[2], on March 5, 2001, the DHS issued a decision finding the plaintiff ineligible for MA benefits. The plaintiff appeals that decision.
 Standard of Review
The Court's review of a decision of the Department of Human Services is controlled by G.L. 1956 § 42-35-15(g), which provides for review of a contested agency decision:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 1) In violation of constitutional or statutory provisions;
 2) In excess of the statutory authority of the agency;
 3) Made upon unlawful procedure;
 4) Affected by other error of law;
 5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307 (R.I. 1988). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, "`questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.'" Carmody v. Rhode Island Conflict of Interest, 509 A.2d 453, 458. (R.I. 1986) (citations omitted). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island Public Telecommunications Authority, et al. v. Rhode Island Labor Relations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 The Department of Human Services
The Rhode Island Department of Human Services is an agency within the Executive Branch of state government. G.L. 1956 § 42-12-1, et seq. Pursuant to its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. Specifically, DHS is responsible for the management of state and federally funded public financial assistance programs. G.L. 1956 § 42-12-4.
General Laws 1956 § 40-8-1(c) provides in pertinent part:
 "[It is] declared to be the policy of the state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance under the provisions of § 40-5.1-9 or § 40-6-27, and who do not have the income and resources to provide it for themselves or who can do so only at great financial sacrifice. Provided further that medical assistance must . . . qualify for federal financial participation pursuant to the provisions of Title XIX of the federal Social Security Act, 42 U.S.C. § 1396 et seq., as such provisions apply to medically needy only applicants and recipients."
The DHS is responsible for administering the Medical Assistance Program within the standards of eligibility as enumerated in G.L. 1956 §40-8-3. For all eligible individuals, DHS must pay benefits pursuant to regulations which it must develop and have approved by the federal government. To comport with federal requirements in order to receive federal funding, the DHS must develop regulations and have them approved by the federal government. See, G.L. 1956 § 40-8-5.
 Standards Used to Determine Disability
Initially, the plaintiff argues that DHS failed to determine disability within SSI standards, in violation of 42 U.S.C. § 1396(d) and underlying regulations, by finding that the plaintiff was not disabled at Step 5 because her residual functional capacity (RFC) indicated that she could do sedentary work. The DHS responds that even though a formal RFC was not presented, the appeals officer went through the sequential five-step process and reviewed all the evidence and testimony presented. Therefore, the DHS decision was substantiated.
The DHS supervises and manages public assistance programs which are funded in part, or in whole, by the federal government. G.L. 1956 §42-12-4. The MA program is a product of the federal Social Security Act and is administered and funded by the federal government.42 U.S.C. § 1396 et seq. The DHS is thus responsible for supervising and managing the MA program. In doing so, DHS is obligated to adopt certain definitions and guidelines established by the federal government. Id. The DHS must use the same definition of "disability" that is provided by the Social Security Act:
 "[F]or the purposes of eligibility, an individual is disabled if s/he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve (12) months. . . ."
 42 U.S.C. § 1382c (a)(3). The DHS must also use the same guidelines established by the U.S. Secretary of Health and Human Services for determining whether an individual is disabled for purposes of the MA program. The guidelines entail the following five-step sequential evaluation:
 "1. Is the claimant engaged in a substantial activity?
 2. If not, is the impairment(s) severe?
 3. If severe, does it meet or equal an impairment listed in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment(s) prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience, and `residual functional capacity,' does the impairment(s) prevent the claimant from doing other work in the national economy?"
See 20 C.F.R. § 416.920; see also Brown v. Yuckert, 482 U.S. 137, 141-43 (1987) (delineating the five steps).
The DHS is obligated to follow a "set order" of steps when evaluating a disability claim. See C.F.R. § 416.920. In doing so, the agency may conclude its inquiry before all the steps are applied. Therefore, an agency can find that an applicant is disabled or not disabled at any point in the review, and does not need to review the claim further. Id. Specifically, "[a] negative answer to any question, other than step three, leads to a determination of not disabled." Pratt v. Rhode Island Dept. of Human Services, No. 96-6490, 1998 WL 64190 at 6 (R.I. 1998) (citing McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986)).
In the instant matter, the appeals officer determined that the plaintiff was unemployed and not engaged in a substantial activity. Next, the appeals officer determined that the plaintiff had documented impairments of adequate duration which imposed limitations on basic work activities. Although the MART did not present a formal RFC or any written report, the appeals officer concluded the plaintiff's functioning to be within the sedentary range of employment with the plaintiff's "ability to lift ten pounds, sit and stand intermittently for three hours with breaks, walking for three hours and sitting for three hours." Based on the plaintiff's previous work experience, the DHS determined her employment was within these parameters.
 Reliance upon Medical Evidence
The plaintiff argues that the appeals officer's findings that plaintiff could do sedentary work and return to her previous employment were clearly erroneous as a matter of law. The DHS responds that its decision is substantiated by the evidence. Therefore, the DHS contends the decision should be affirmed.
Step 5 of the sequential evaluation requires that the DHS determine the residual functional capacity (RFC) of the claimant. An individual's RFC is the physical and mental work activities the claimant can still do despite his or her impairments. 20 C.F.R. § 416.945(a), (b), and (c). If a claimant's RFC is inconsistent with the ability to do past work, as actually performed, it is classified as either "sedentary," "light," "medium," "heavy," or "very heavy." To have an RFC for sedentary work, an individual must have the ability to perform the "full range" of sedentary work from an exertional standpoint. See Social Security Ruling (SSR) 83-10. Sedentary work is defined as:
 "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. . . . Since being on one's feet is required `occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." (Emphasis added.)
Id.; See also 20 C.F.R. § 416.967 (a).
In the instant matter, the appeals officer determined that treating physician Dr. Cancro's assessment of the plaintiff's RFC indicated the plaintiff's ability to do sedentary work. Specifically, the appeals officer stated that:
 "[a]lthough the MART did not present formal Residual Functional Capacity, the treating physician indicates functioning which would fall into the sedentary range of employment with the ability to lift ten pounds, sit and stand intermittently for three hours with breaks, walking for three hours and sitting for four hours." (Emphasis added.)
However, this Court finds that the SSR 83-10 requirements for sedentary work are inconsistent with Dr. Cancro's RFC assessment of the plaintiff. According to Dr. Cancro, the plaintiff can sit for a maximum of four hours. Contrastingly, the sedentary level of exertion pursuant to SSR 83-10 requires the claimant be able to sit for approximately six hours.
Moreover, this Court finds that the appeals officer's determination that the plaintiff's physical limitations were within the parameters of past work is also inconsistent with the evidence presented. According to the record, the plaintiff's previous employment required her to either stand for eight hours per day while working at Ames, sit for eight hours per day at her jewelry soldering job, or be seated for most of the day at the carding job.[3] The plaintiff's current physical limitations as documented by Dr. Cancro's RFC assessment are not within the parameters of the plaintiff's previous employment.[4]
Although a treating physician's assessment is not always determinative, if the SSA finds that a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the SSA will give such an opinion controlling weight.20 C.F.R. § 404.1527(d)(2). The Second Circuit acknowledged in Schaal v. Apfel, 134 F.3d 496, 55 Soc. Sec. Rep. Serv. 128, 149 A.L.R. Fed. 679 (2d Cir. 1998) that this regulation superseded its more deferential common law treating physician rule. Interestingly, the appeals officer gave controlling weight to Dr. Cancro's RFC assessment in determining that the plaintiff could return to her previous employment. However, Dr. Cancro's opinion was discounted by the appeals officer with regard to the plaintiff's other physical and mental limitations.
In the instant matter, not only did the appeals officer incorrectly determine that Dr. Cancro's assessment was consistent with the plaintiff's ability to do sedentary work, but the appeals officer also erred when she found "nonexertional limitations are not creditably supported in the record."
The regulations require that in determining RFC, a claimant's physical, mental, and non-exertional limitations are all taken into consideration. See 20 C.F.R. § 416.945(e). Non-exertional capacity includes "all work-related limitations and restrictions that do not depend on an individual's physical strength." 61 Fed Reg. 34477 (July 2, 1996). Moreover, when considering non-exertional and mental impairments, the rules state that:
 "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting may reduce your ability to do past work and other work."
 20 C.F.R. § 416.945 (c).
Here, the record establishes the existence of mental and nonexertional limitations, as defined by 20 C.F.R. § 416.945. All of the plaintiff's mental activities (except for one) were documented as either "moderately limited" or "slightly limited." Accordingly, the appeals officer's failure to consider this evidence is inconsistent with the Social Security Act and its underlying regulations.
 Conclusion
In light of the foregoing, the appeals officer's decision to deny the plaintiff disability benefits is unsupported by substantial evidence in the record. Furthermore, it is the opinion of this Court that remanding to DHS would further and simply delay the receipt of benefits by the plaintiff. See Randall v. Sullivan, 956 F.2d 105 (5th Cir. 1992) (because of the mistaken reliance on medical reports and in light of the claimant's extensive medical record, the court found it unconscionable to remand the case for further review and awarded social security disability benefits).
After reviewing the entire record, this Court finds that the substantial rights of the plaintiff have been prejudiced because the DHS findings were clearly erroneous, arbitrary, and in violation of the statutory provisions of the Social Security Act. Accordingly, the DHS decision is reversed, and this matter is remanded for the award of benefits consistent with this decision. Additionally, the plaintiff requests attorney's fees pursuant to the Equal Access to Justice Act. G.L. 1956 (1993 Reenactment) 42-92-1, et seq. A plaintiff is entitled to recover reasonable attorney's fees if deemed to be the prevailing party, unless the position of the agency is substantially justified. G.L. 1956 § 42-92-3. In meeting the substantial justification test, the agency has the burden to show that its position was at least clearly reasonable, well-founded in law and fact, and solid though not necessarily correct. Francisco v. Rhode Island Dept. of Human Services, 1997 WL 1051030 (R.I.Super. 1997) (citing Taft v. Pare, 536 A.2d 888
(R.I. 1988)). Because this Court finds the DHS position to be unreasonable in view of the competent evidence contained in the whole record, an award of attorney's fees is justified.
Counsel shall submit the appropriate order for entry.
[1] Neuorpathy is a complication of diabetes that may be associated with numbness, tingling, and paresthesias in extremities (typically in "stocking-glove" distribution), and less often with deep-seated pain. The Merck Manual, 16th ed. at 1110 (1992).
[2] Maureen Corkey from the Medical Assistant Review Team testified at the administrative hearing that the MART evaluation was informal and not written. Specifically, she stated that it was "just kind of notes that we looked at together as a team."
[3] The plaintiff indicates in both of her AP-70 forms that the arthritis and swelling in her hands hinders her ability to work. Moreover, the plaintiff was diagnosed by Dr. Cancro as having diabetic neuropathy accompanied by pain, burning, and tingling of the hands and feet.
[4] Since most sedentary jobs require good use of the hands and fingers, if claimant cannot perform continuous hand-finger activities, she is not able to perform the full range of sedentary work. Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991) (quoting SSR 83-14). See also SSR 83-10 (CE 1983) (same).