Leslie BAILEY, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

No. 10–cv–0865 (DLI).

United States District Court, E.D. New York.

Sept. 27, 2011.

Jeffrey D. Delott, Jericho, NY, for Plaintiff.

Karen T. Callahan, United States Attorneys Office, Brooklyn, NY, Social Security Administration, for Defendant.

## MEMORANDUM AND ORDER

DORA L. IRIZARRY, District Judge.

Plaintiff Leslie Bailey appeals the decision of the Commissioner of Social Security ("the Commissioner"), which found that she was not disabled under the Social Security Act ("the Act") and, therefore, not entitled to Social Security Disability ("SSD") benefits. (Compl. at ¶ 3.) Defendant moved for remand for further administrative proceedings pursuant to 42 U.S.C. § 405(g) in order for the Commissioner to consider additional medical records, which defendant claimed constituted new and material evidence. (Def. Notice of Mot. at 1; Def. Mem. in Supp. of Mot. for Remand at 15–16.) Plaintiff cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (see Pl. Notice of Mot. at 1), seeking reversal of the Commissioner's decision and remand solely for the purpose of calculating an award of benefits. (Pl. Br. at 1.) For the reasons set forth below, plaintiff's motion for judgment on the pleadings is denied, defendant's motion is granted, and the case is remanded to the Commissioner for further proceedings consistent with this Order.

## BACKGROUND

### I. Procedural History

Plaintiff filed a disability application on April 26, 2006, alleging she was disabled due to fibromyalgia beginning July 20, 2004. (A.R. at 156–59, 164.)[1] The application was denied on August 18, 2006. (A.R. at 73–74, 100–03.) Plaintiff subsequently requested and was granted a hearing before Administrative Law Judge David Nisnewitz ("the ALJ"). (A.R. at 104.) By decision dated July 20, 2007, the ALJ denied the application. (A.R. at 75–83.) On February 27, 2009, the Appeals Council granted plaintiff's request for review and remanded the case for additional proceedings. (A.R. at 87–92.) On September 24, 2009, the ALJ issued a decision again finding plaintiff was not disabled. (A.R. at 12–22.) On January 29, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision, and the

---

1. "A.R." citations are to the correspondingly numbered pages in the certified administrative record.

ALJ's decision became the Commissioner's final decision. (A.R. at 1–3.) On March 2, 2010, plaintiff filed the instant appeal. The Commissioner served the certified administrative record and his answer on plaintiff on May 28, 2010.

On June 22, 2010, counsel for plaintiff emailed defense counsel a three-page report from Dr. Bruce Stein ("Dr. Stein"), a rheumatologist, and three pages of treatment notes from Queens Long Island Medical Group that he claimed were excluded from the administrative record. (*See* Declaration of Jeffrey Delott ("Delott Decl.") ¶ 8.) Defendant noted that only the November 11, 2005 records from Dr. Stein (the "November 11, 2005 records") had been excluded from the administrative record. (*See* Delott Decl. ¶ 8.) On August 13, 2010, Defendant reported that the Appeals Council ("AC") wanted to remand the case because the AC had not addressed Dr. Stein's November 11, 2005 assessment prior to denying plaintiff's request for review of the ALJ's September 24, 2009 decision. (*See* Delott Decl. ¶ 10.) Plaintiff contends that the AC "undeniably" received the November 11, 2005 records, and that the rationale for remand is baseless. (*See* Delott Decl. ¶ 11–12.)

Defendant now seeks remand for the evaluation of the November 11, 2005 medical records, contending these records constitute new and material evidence that meet the criteria for remand. (Def. Mem. in Supp. of Mot. for Remand at 15–16.) Plaintiff opposes defendant's motion and seeks judgment on the pleadings, contending that: (1) the ALJ erred in finding plaintiff was not disabled for the period of from July 31, 2004 to November 6, 2006;

(2) the November 11, 2005 records do not constitute new and material evidence; and (3) the matter should be remanded solely for the purpose of recalculating an award of benefits.

## II. Non-medical and Testimonial Evidence

Plaintiff was born in 1960 in the Bronx, New York. (S.A.R. at 418.)[2] She attended two years of college at Long Island University's Brooklyn campus and subsequently completed two certificate classes in business at Saint Joseph's College. (S.A.R. at 419–20.) Plaintiff commenced work as a dispatcher for the New York City Transit Authority in 1991 and was promoted to a supervisory role in which she supervised forty-five dispatchers.[3] (S.A.R. at 420–21.) In 1997, plaintiff took a job as a decision dispatcher with the New York City Fire Department ("FDNY"), receiving incoming calls and determining which units to send to the scene of a fire. (S.A.R. at 425, 430.)

On July 20, 2004, Plaintiff injured her neck, back, shoulder and knee in a car accident and subsequently stopped working. (S.A.R. at 432–33, 491–92; *see also* A.R. at 164.) On July 19, 2006, plaintiff completed a disability function report for the New York State Office of Temporary and Disability Assistance's Division of Disability Determinations. (A.R. at 191–203.) Plaintiff's May 1, 2007 testimony corroborated her questionnaire responses. Plaintiff stated that her daily activities included physical therapy exercises, showering, preparing and eating simple meals, taking short walks, watching television, modified Pilates exercises, and light chores. (A.R.

---

**2.** "S.A.R." citations are to the correspondingly numbered pages in the certified supplemental administrative record.

**3.** In 1994 or 1995, the Transit Authority merged with the New York City Police Department ("NYPD") and plaintiff continued her role as a supervising dispatcher with the NYPD. (S.A.R. at 421.)

at 193–94; S.A.R. at 477.) Plaintiff included three "rest" breaks in her average day, as well as three showers, which temporarily relieved her muscle tightness. (A.R. at 193.) She asserted that she had difficulty falling asleep and staying asleep because of pain. (A.R. at 193.) Plaintiff indicated she sometimes became confused and forgot how to perform simple tasks. (A.R. at 196, 199.) For example, one time she forgot how to count her money at a store and another time she could not recall her debit card PIN code. (A.R. at 196.) Plaintiff further testified that she could only sit for approximately ten to fifteen minutes at a time before she needed to get up and move around and, if she added up the periods within an eight-hour work day that she could sit, she could sit for an estimated total of two to three hours. (S.A.R. 471–72.) Plaintiff added that she could lift about ten pounds with both hands and could carry it across a room "with difficulty and pain." (A.R. at 473.)

Plaintiff returned to work on November 6, 2006. Plaintiff testified that she only returned to work because her medical coverage had stopped. (S.A.R. at 437–38, 507–08, 510–11.) She testified that, during this period, she was forgetful, tired, experienced pain with activity, and would fall asleep during her shift. (S.A.R. at 467.) Plaintiff further testified that she experienced "extreme pain at work" and could not concentrate. (S.A.R. at 495.) She worked until April 28, 2007, when she was removed from her post for errors she made in assigning units to fire scenes. (S.A.R. at 431, 437–38.) Plaintiff stated that, in her fifteen years of work, she never had been written up and attributed her errors to her post-accident injuries. (S.A.R. at 431–32.)

After a one-month leave, plaintiff returned to work in May 2007 and continues to work as a dispatcher at present.

(S.A.R. at 488, 497–98.) With regard to her current ability to perform, plaintiff testified that she takes about eight ten-to-fifteen minute breaks during her eight-hour work shift and, two to three times each week, she also takes longer breaks of one to two hours to lie down or sleep. (S.A.R. at 513–14.) Additionally, plaintiff testified that her supervisor sometimes allows her to leave work early. (S.A.R. at 514.) Plaintiff added she could not have returned to work during the closed period in question, even if she had been provided the current special accommodations made for her. (S.A.R. 518–21, 523.)

## III. Medical Evidence

Immediately following her car accident on July 20, 2004, plaintiff went to the Emergency Department of Franklin Hospital Medical Center complaining of back, neck and head pain. (A.R. at 261.) Plaintiff was treated in the emergency room and sent home with medication for pain. (S.A.R. at 432–33.) No serious injuries were noted in the hospital record. (A.R. at 261.)

The next day, plaintiff visited Dr. Lev Bentsianov ("Dr. Bentsianov"), an internist, complaining of headaches, dizziness, pain in her neck radiating to her right shoulder, "constant, persisting" upper and lower back pain, and pain in her left knee. (A.R. at 282.) Dr. Bentsianov diagnosed plaintiff with fibromyalgia, sprains to her cervical and lumbosacral paraspinal muscles and ligaments, myositis, post-traumatic stress syndrome, left knee sprain and contusion, and cervical, thoracic, and lumbosacral radiculopathy. (A.R. at 282–86; S.A.R. at 433–35.) He referred plaintiff to a physical therapist, a neurologist, a psychologist, and a chiropractor and instructed her to begin intensive physical therapy treatments three to four times each week. (A.R. at 285.) Dr. Bentsianov examined

plaintiff again on October 19, 2004. (A.R. at 262–67.) His Final Report on plaintiff's condition was consistent with his initial diagnoses. (A.R. at 262–67.) Throughout his treatment of plaintiff, Dr. Bentsianov did not comment on plaintiff's ability to work.

On November 29, 2004, plaintiff visited Dr. Asher Haldea ("Dr. Haldea"), a neurologist, who recommended that plaintiff continue her physical therapy sessions and take Daypro and Neurontin for pain. (A.R. at 383.) On August 18, 2005, Dr. Haldea diagnosed plaintiff with possible fibromyalgia and possible anxiety, referred her to a rheumatologist and discharged her from her care. (A.R. at 373.) Dr. Haldea did not comment on plaintiff's ability to work.

On September 23, 2005, plaintiff met with Dr. Bruce Stein ("Dr. Stein"), a rheumatologist, who noted that plaintiff's symptoms were suggestive of fibromyalgia. (A.R. at 303, 304, 369.) Dr. Stein subsequently examined plaintiff on December 9, 2005 and January 27, 2006. (A.R. at 398–99, 403.) The reports state a history of fibromyalgia, generalized pain, fatigue, and poor restorative sleep. (A.R. at 398–99, 403.) Dr. Stein advised plaintiff to continue her present medications (Neurontin, a pain reliever, and Flexeril, a muscle relaxant) and to exercise. (A.R. at 398–99, 403.) He did not comment on plaintiff's ability to work and noted that plaintiff "appear[ed] clinically stable." (A.R. at 398–99, 403.) On February 24, 2006, Dr. Stein opined in a letter that, "due to [plaintiff's] difficulty with lifting, carrying, and bending due to her fibromyalgia as well as chronic fatigue[,] she is unable to continue working at this time for [an] indefinite period of time." (A.R. at 306–307.)

On June 2, 2006, Dr. Stein completed a Fibromyalgia Impairment Questionnaire ("questionnaire") created by plaintiff's at-torney in the instant matter. (A.R. at 45–49, 344–51.) In this questionnaire, Dr. Stein indicated that: (i) plaintiff met the American College of Rheumatology's ("ACR") criteria for fibromyalgia; (ii) plaintiff's impairments and functional limitations were reasonably consistent with her physical and emotional impairments; and (iii) plaintiff's pain was at a level of eight on a scale of one to ten (with ten being the most severe level of pain). (A.R. at 344, 346–47.) Dr. Stein estimated that, in an eight-hour work day, plaintiff could sit, stand, or walk for a total of one hour, and must get up and move around for approximately fifteen minutes every hour. (A.R. at 347–48.) Dr. Stein also noted that plaintiff would need to take unscheduled ten to fifteen minute breaks every forty-five to sixty minutes in an eight-hour work day, and that she likely would be absent from work more than three times each month as a result of her impairments. (A.R. at 347–51.)

Plaintiff subsequently visited Dr. Edmond Sarkissian, a general practitioner, who confirmed Dr. Stein's diagnosis of fibromyalgia. (A.R. at 404–07, 412–13.) Dr. Sarkissian advised plaintiff to take iron pills for anemia, as well as vitamins, and, for her pain, Tylenol and Advil. (A.R. at 404, 408, 411.) Dr. Sarkissian did not draw any conclusions regarding plaintiff's physical capabilities or ability to work.

## IV. Expert Testimonial Evidence

On May 19, 2009, Mr. Garozzo, a vocational expert, testified before the ALJ that plaintiff's current job as a radio dispatcher is sedentary and semi-skilled. (S.A.R. at 526.) Mr. Garozzo further testified that "the radio dispatcher [position] definitely would not be able to be performed" by a person who required the breaks plaintiff testified she currently is provided. (A.R. at 539.)

Dr. Charles Plotz ("Dr. Plotz") testified as a medical expert at plaintiff's June 16, 2009 hearing. (A.R. at 23–72.) Dr. Plotz testified that Dr. Stein had "entertained" a diagnosis of fibromyalgia and opined that "[f]rom an actual physical point of view," plaintiff could perform light work and "[c]ertainly sedentary work. But the fibromyalgia may have presented to her overwhelming problems as far as not being able to do most anything." (A.R. at 29, 30.) Dr. Plotz noted that there were no physical findings to account for plaintiff's pain, but later testified that a doctor would not expect physical findings with fibromyalgia. (A.R. at 33, 55.)

Dr. Plotz also opined that Dr. Stein's assertion that plaintiff could sit for no more than one hour per eight-hour work day "seem[ed] kind of ridiculous on the basis of the medical record" because plaintiff should be able to be on her feet, stand or walk for six hours of an eight-hour work day, and have no limitations as to sitting. (A.R. at 30, 33–34.) When asked how he reached that conclusion, Dr. Plotz noted that Dr. Stein had prescribed only Lyrica (Neurontin), rather than a morphine-type drug for pain, "which would indicate to me that she probably does not have as severe pain as to preclude her working." (A.R. at 66–67.)

### DISCUSSION

### I. Standard of Review

A district court reviewing the final determination of the Commissioner must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel,* 134 F.3d 496, 504 (2d Cir.1998). This requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v.* *Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir.1982) (internal quotations omitted).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the ... regulations." *Manago v. Barnhart,* 321 F.Supp.2d 559, 568 (E.D.N.Y.2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir.1999) (quoting *Sobolewski v. Apfel,* 985 F.Supp. 300, 314 (E.D.N.Y.1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir.1999).

### II. Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic

techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in the regulations. *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e); *see also Caplan v. Astrue,* 2009 WL 691922, at *6 (E.D.N.Y. Mar. 15, 2009). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts from the plaintiff to the Commissioner to demonstrate that the plaintiff could perform other work in the national economy. *Caplan,* 2009 WL 691922, at *6; *see also Draegert v. Barnhart,* 311 F.3d 468, 472 (2d Cir.2002) (citing *Carroll,* 705 F.2d at 642).

## III. The ALJ's Decision

The ALJ applied the five-step procedure to make his determination that plaintiff was not disabled. (A.R. at 16–21.) At steps one and two, he determined that plaintiff had not engaged in substantial gainful activity during the closed period of from July 31, 2004 through November 6, 2006 and that plaintiff's fibromyalgia constituted a "severe impairment." (A.R. at 17.) At step three, the ALJ determined that plaintiff's impairment did not meet any of the listed impairments in the regulations. (A.R. at 18.) At step four, the ALJ found that plaintiff was not disabled because she had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a)[4] and her impairments did not prevent her from performing her past relevant work as a fire alarm dispatcher. (A.R. at 18–21.)

The ALJ discredited Dr. Stein's opinion as being unsupported by medical, diagnostic, or clinical findings and stated that plaintiff's subjective complaints were not supported by objective laboratory and diagnostic tests. (A.R. at 20.) He further

---

4. 20 C.F.R. 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. 404.1567(a). Additionally, "[t]he Second Circuit has recognized that sedentary work generally involves sitting for six hours per day." *Robinson v. Chater,* 1996 WL 5067, at *4 (S.D.N.Y. Jan. 5, 1996).

noted that plaintiff refused to attend an independent consultative examination on the advice of her attorney. (A.R. at 21.) Whereupon, the ALJ gave great weight to the testimony of the impartial medical examiner, Dr. Plotz. (A.R. at 21.)

The ALJ concluded that plaintiff's RFC did not preclude her from performing the physical and mental demands of her past relevant work as a fire alarm dispatcher and, therefore, she was not disabled for the closed period in question. (A.R. at 21.) The ALJ accordingly denied plaintiff's claim for SSD benefits under sections 216(i) and 223(d) of the Act. As set forth in more detail below, because the ALJ's decision is based on a flawed application of the pertinent legal standards, this matter must be remanded for further proceedings.

## IV. Application

### A. Treating Physician Rule

A treating source's medical opinion on the nature and severity of an impairment is given controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993) (citing 20 C.F.R. 404.1527(d)). Social security regulations define "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides a claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant." *Brickhouse v. Astrue,* 331 Fed. Appx. 875, 877 (2d Cir.2009) (citing 20 C.F.R. § 404.1502).

If an ALJ determines that a treating physician's opinion is not controlling, he or she is still required under social security regulations to consider the following six factors in determining the proper weight to be accorded to the treating physician's

opinion: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the relationship; (iii) the evidence provided to support the treating physician's opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other factors brought to the Commissioner's attention that tend to support or contradict the opinion. *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998) (citing 20 C.F.R. § 404.1527(d)). *See also Pimenta v. Barnhart,* 2006 WL 2356145, at *4 (S.D.N.Y. Aug. 14, 2006). Additionally, the ALJ must always give "good reasons" in his or her decision for the weight accorded to a treating physician's medical opinion. *Id.* "Failure to provide good reason' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999) (citing *Schaal,* 134 F.3d at 505).

 However, certain ultimate conclusions are not made by the treating physicians but, instead, are made by the ALJ. Such decisions include the determination that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell,* 177 F.3d at 133.

 Here, the ALJ relied primarily on testimony from the medical examiner, Dr. Plotz, according it greater weight than the testimony of Drs. Bentsianov and Stein, both of whom had treated plaintiff for a substantial period of time, to conclude that plaintiff was not disabled during the closed period in question because she was capable

of performing sedentary work. (A.R. at 18–21.) Although the ALJ acknowledged that both Dr. Bentsianov and Dr. Stein had diagnosed plaintiff with fibromyalgia, he stated that Dr. Stein's opinion as to plaintiff's RFC was "not supported by the clinical diagnostic evidence to the extent alleged." (A.R. at 21.) The ALJ added that, while he "must consider medical source opinion concerning such issues as residual functional capacity," he is "not bound to accept a treating source's conclusion as to disability, particularly if it is not supported by detailed, clinical, diagnostic evidence." (A.R. at 20.)

### 1. The ALJ's Application of the Treating Physician Rule

The ALJ accorded Dr. Plotz's opinion controlling weight and disregarded Dr. Stein's opinion that plaintiff could sit for a total of one hour, could stand or walk for a total of one hour, and must get up and move around for approximately fifteen minutes every hour, because the ALJ deemed it unsupported by clinical and diagnostic evidence. (A.R. at 20–21, 347–48.) Fibromyalgia is a unique disease and courts have found error when an ALJ "did not actually credit [the treating physician's] diagnosis of fibromyalgia or misunderstood its nature" by requiring "objective evidence for a disease that eludes such measurement." *Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir.2003). In fact, the Second Circuit has found that a treating physician's reliance on his or her patient's *subjective* pain "hardly undermines [the treating physician's] opinion as to [the patient's] functional limitations . . . ." *Id.* at 107.

Assuming that Dr. Plotz's opinion constituted substantial evidence, the ALJ still failed to satisfy his duty to consider the six factors set forth in 20 C.F.R. § 404.1527(d) before completely rejecting Dr. Stein's treating physician opinion. Dr. Stein is a specialist in rheumatology and has examined plaintiff on at least five occasions during the relevant period.[5] As the treating physician who examined plaintiff most frequently and throughout the course of her illness, Dr. Stein is best suited to provide a "detailed, longitudinal picture" of plaintiff's impairments. 20 C.F.R. § 404.1527(d)(2)(ii); *see Pimenta*, 2006 WL 2356145, at *5. However, the ALJ did not consider the extent of Dr. Stein's relationship with plaintiff and noted only that Dr. Stein?s opinion was "not supported by the clinical diagnostic evidence to the extent alleged." (A.R. at 21.) While Dr. Plotz testified that there were no physical findings regarding plaintiff's pain, he later conceded that a doctor would not expect physical findings with fibromyalgia. (A.R. at 33, 55.) Dr. Stein's opinion was also corroborated by plaintiff's other treating physicians, Drs. Bentsianov and Haldea, both of whom referred plaintiff to a rheumatologist, and Dr. Sarkissian, her general practitioner, all of whom came to the same conclusion, *i.e.*, that plaintiff had fibromyalgia. Thus, the ALJ erred in disregarding Dr. Stein's longitudinal history with plaintiff, and the corroboration of other treating physicians, in favor of the opinion of a medical examiner who looked only to the fact that plaintiff was not prescribed morphine in order to determine plaintiff's RFC. The ALJ's failure to provide "good reason" for not crediting the opinion of plaintiff's treating source alone is ground for remand.

Accordingly, this case must be remanded for a disability determination due to the ALJ's failure to properly apply the treating physician rule. Plaintiff's request for

---

**5.** As discussed in detail, *infra* Section B., the November 11, 2005 records are evidence that plaintiff had been treated by Dr. Stein a sixth time.

remand solely for the calculation of benefits is therefore denied.

### 2. *Independent Consultative Examination*

As noted above, the ALJ ordered plaintiff to attend an independent consultative examination, which plaintiff did not attend on the advice of her attorney.[6] (A.R. at 25–26.) When a report contains a conflict or ambiguity that must be resolved, the ALJ is obligated to seek additional evidence or clarification (20 C.F.R. § 404.1512(e) and *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999)). If the conflict or inconsistency cannot be resolved by recontacting the claimant's medical source, a consultative examination is required.[7] *See Amberg v. Astrue,* 2010 WL 2595218, at *4–5 (N.D.N.Y. May 24, 2010) (citing 20 C.F.R. § 404.1512(f)). Within these guidelines, the decision as to whether to obtain an independent consultative examination ultimately is within the discretion of the ALJ. *Id.* at *5. *See also Hanratty v. Chater,* 1997 WL 631024, at *5 (W.D.N.Y. Aug. 11, 1997) (citing 20 C.F.R. § 404.1517 ("an ALJ has discretion to order a consultative examination where [he or she] deems it is warranted").

Here, however, there is no indication in the record that the ALJ attempted to contact Dr. Stein, or any of plaintiff's other treating sources, for clarification or elaboration of their findings, even though the Appeals Council ordered the ALJ to recontact the treating sources "to update and/or clarify the record." (A.R. 90) Rather than seek additional clarification from the plaintiff's treating source, the ALJ simply stated that he did not "want to hear from the treating source again" and wanted plaintiff to undergo an independent consultative examination in order to resolve "contradictions in the file" that he "didn't think the treating source could resolve." (A.R. at 25–26.) There is no evidence indicating that the ALJ made any effort to elicit medical reports or information from Dr. Stein or that the ALJ had reason to believe Dr. Stein would not provide such information. As discussed *supra* in Section 1., it was improper for the ALJ to discount the conclusions of Dr. Stein without recontacting him and seeking additional information. Because the ALJ did not properly weigh Dr. Stein's opinion, this court cannot determine whether the ALJ abused his discretion in ordering a consultative examination.

### B. Remand to Evaluate New and Material Evidence

■ Defendant urges the court to remand the matter for consideration of the November 11, 2005 medical records. The court may remand a case and order additional evidence to be taken before the Commissioner upon a showing that there is new and material evidence and that there is good cause for the failure to incorporate such evidence into the record in prior proceedings. *See Shalala v. Schaefer,* 509 U.S. 292, 297, n. 2, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). The evidence in question must be: (1) new, and not merely a cumulative account of what already exists in the record; (2) relevant to the

---

**6.** Plaintiff's refusal to attend does not constitute "good reason" for failing to attend or take part in a consultative examination within Social Security regulations, (*see* 20 C.F.R. § 404.1518(b)).

**7.** Additionally, regulations provide that an ALJ "may not seek additional evidence or

clarification from a medical source when [he or she] know[s] from past experience that the source either cannot or will not provide the necessary finding." *Hill v. Barnhart,* 410 F.Supp.2d 195, 208 (S.D.N.Y.2006) (citing § 404.1512(e)(2)).

claimant's condition; and (3) there must be good cause for failing to present this evidence in earlier proceedings. *Lisa v. Sec'y of Health & Human Servs.,* 940 F.2d 40, 43 (2d Cir.1991). This type of remand is appropriate when the evidence in question "might have changed the outcome of [the] proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990).

Defendant contends that the November 11, 2005 records are new and not merely cumulative of evidence already in the record, and material in that they are both relevant to plaintiff's condition during the time period in question and probative. (Def. Mem. in Supp. of Mot. for Remand at 16.) Defendant argues that although plaintiff's counsel may have submitted the November 11, 2005 records to the AC with his September 30, 2009 letter requesting review, the AC did not review or consider those records in deciding to deny plaintiff's request for review of the AC's decision. (*Id.; see* A.R. 1–4.) Defendant further argues that because this new evidence has not been reviewed by the Commissioner, and has not been made a part of the administrative record, remand is required pursuant to the sixth sentence of 42 U.S.C. § 405(g). (*Id.* at 17.)

The November 11, 2005 records reveal that plaintiff had a "history of probable fibromyalgia" and continued to experience "generalized arthralgias with difficulty sleeping and poor restorative sleep." (A.R. at 364.) A musculoskeletal exam revealed "multiple scattered tender points in the upper and lower back, bilateral biceps, and bilateral hips" and Dr. Stein's final assessment stated that plaintiff's "symptoms remain suggestive of fibromyalgia." (A.R. at 364.) Dr. Stein prescribed 100 mg of Neurontin daily and 10 mg of cyclobenzaprine (a muscle relaxant) as needed. (A.R. at 364.)

Although the November 11, 2005 records reveal no significant changes in plaintiff's condition, they are new, in the sense that they were not previously considered by the Commissioner, and material, insofar as they corroborate Dr. Stein's findings and underscore the longitudinal history of plaintiff's treatment with him. When viewed in conjunction with the medical evidence in the certified administrative record, the November 11, 2005 records demonstrate that plaintiff's condition remained constant and that she was seen by Dr. Stein five times during a six-month period. To the extent that the November 11, 2005 records are consistent with the previous and subsequent records, and document one more visit with plaintiff's treating physician during the relevant period, the records are probative of the fact that Dr. Stein, a specialist in rheumatology, treated plaintiff on a frequent, almost monthly, basis during the relevant time period, making the ALJ's failure to apply the treating physician rule even more egregious.

Since this matter is remanded for the ALJ to duly consider the treating physician's findings against all the other medical evidence and accord it its proper weight, the records in question are to be considered and evaluated upon reconsideration of plaintiff's treating sources.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the pleadings is denied, defendant's motion is granted to the extent that the November 11, 2005 records will be evaluated upon remand, and this action is remanded to the Commissioner, pursuant to the fourth and sixth sentences of 42 U.S.C. § 405(g), for further proceedings consistent with this Order. The court directs that, on remand, this matter be assigned to a different ALJ,

as the administrative record indicates a level of contentiousness between ALJ Nisnewitz and plaintiff's counsel that was not appropriate and did not advance the ultimate goal of developing the record in a meaningful way.

SO ORDERED.